## DOE *v.* CHAO, SECRETARY OF LABOR

No. 02–1377.   Argued December 3, 2003—Decided February 24, 2004

SOUTER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, and THOMAS, JJ., joined, and in which SCALIA, J., joined except as to the penultimate paragraph of Part III and footnote 8. GINSBURG, J., filed a dissenting opinion, in which STEVENS and BREYER, JJ., joined, *post*, p. 627. BREYER, J., filed a dissenting opinion, *post*, p. 641.

*Jack W. Campbell IV* argued the cause for petitioner. With him on the briefs were *Donald B. Ayer, Dominick V. Freda,* and *Joseph E. Wolfe.*

*Malcolm L. Stewart* argued the cause for respondent. With him on the brief were *Solicitor General Olson, Assistant Attorney General Keisler, Deputy Solicitor General Kneedler, Patricia A. Millett, Leonard Schaitman, Anthony A. Yang, Howard M. Radzely, Allen H. Feldman, Nathaniel I. Spiller,* and *Michael P. Doyle.**

JUSTICE SOUTER delivered the opinion of the Court.

The United States is subject to a cause of action for the benefit of at least some individuals adversely affected by a federal agency's violation of the Privacy Act of 1974. The question before us is whether plaintiffs must prove some actual damages to qualify for a minimum statutory award of $1,000. We hold that they must.

I

Petitioner Buck Doe filed for benefits under the Black Lung Benefits Act, 83 Stat. 792, 30 U. S. C. § 901 *et seq.,* with the Office of Workers' Compensation Programs, the division

---

*\*David K. Colapinto, Stephen M. Kohn,* and *Michael D. Kohn* filed a brief for Linda R. Tripp et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* were filed for the Electronic Privacy Information Center et al. by *Marc Rotenberg* and *David L. Sobel;* and for the Reporters Committee for Freedom of the Press by *Lucy A. Dalglish.*

of the Department of Labor responsible for adjudicating it. The application form called for a Social Security number, which the agency then used to identify the applicant's claim, as on documents like "multicaptioned" notices of hearing dates, sent to groups of claimants, their employers, and the lawyers involved in their cases. The Government concedes that following this practice led to disclosing Doe's Social Security number beyond the limits set by the Privacy Act. See 5 U. S. C. § 552a(b).

Doe joined with six other black lung claimants to sue the Department of Labor, alleging repeated violations of the Act and seeking certification of a class of " 'all claimants for Black Lung Benefits since the passage of the Privacy Act.' " Pet. for Cert. 6a. Early on, the United States stipulated to an order prohibiting future publication of applicants' Social Security numbers on multicaptioned hearing notices, and the parties then filed cross-motions for summary judgment. The District Court denied class certification and entered judgment against all individual plaintiffs except Doe, finding that their submissions had raised no issues of cognizable harm. As to Doe, the court accepted his uncontroverted evidence of distress on learning of the improper disclosure, granted summary judgment, and awarded $1,000 in statutory damages under 5 U. S. C. § 552a(g)(4).

A divided panel of the Fourth Circuit affirmed in part but reversed on Doe's claim, holding the United States entitled to summary judgment across the board. 306 F. 3d 170 (2002). The Circuit treated the $1,000 statutory minimum as available only to plaintiffs who suffered actual damages because of the agency's violation, id., at 176–179, and then found that Doe had not raised a triable issue of fact about actual damages, having submitted no corroboration for his claim of emotional distress, such as evidence of physical symptoms, medical treatment, loss of income, or impact on his behavior. In fact, the only indication of emotional affliction was Doe's conclusory allegations that he was " 'torn . . .

all to pieces'" and "'greatly concerned and worried'" because of the disclosure of his Social Security number and its potentially "'devastating'" consequences. *Id.*, at 181.

Doe petitioned for review of the holding that some actual damages must be proven before a plaintiff may receive the minimum statutory award. See Pet. for Cert. i. Because the Fourth Circuit's decision requiring proof of actual damages conflicted with the views of other Circuits, see, *e. g., Orekoya* v. *Mooney*, 330 F. 3d 1, 7–8 (CA1 2003); *Wilborn* v. *Department of Health and Human Servs.*, 49 F. 3d 597, 603 (CA9 1995); *Waters* v. *Thornburgh*, 888 F. 2d 870, 872 (CADC 1989); *Johnson* v. *Department of Treasury, IRS*, 700 F. 2d 971, 977, and n. 12 (CA5 1983); *Fitzpatrick* v. *IRS*, 665 F. 2d 327, 330–331 (CA11 1982), we granted certiorari. 539 U. S. 957 (2003). We now affirm.

## II

"[I]n order to protect the privacy of individuals identified in information systems maintained by Federal agencies, it is necessary . . . to regulate the collection, maintenance, use, and dissemination of information by such agencies." Privacy Act of 1974, § 2(a)(5), 88 Stat. 1896. The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements.

Subsection (g)(1) recognizes a civil action for agency misconduct fitting within any of four categories (the fourth, in issue here, being a catchall), 5 U. S. C. §§ 552a(g)(1)(A)–(D), and then makes separate provision for the redress of each. The first two categories cover deficient management of records: subsection (g)(1)(A) provides for the correction of any inaccurate or otherwise improper material in a record, and subsection (g)(1)(B) provides a right of access against any agency refusing to allow an individual to inspect a record kept on him. In each instance, further provisions specify

such things as the *de novo* nature of the suit (as distinct from any form of deferential review), §§ 552a(g)(2)(A), (g)(3)(A), and mechanisms for exercising judicial equity jurisdiction (by *in camera* inspection, for example), § 552a(g)(3)(A).

The two remaining categories deal with derelictions having consequences beyond the statutory violations *per se.*. Subsection (g)(1)(C) describes an agency's failure to maintain an adequate record on an individual, when the result is a determination "adverse" to that person. Subsection (g)(1)(D) speaks of a violation when someone suffers an "adverse effect" from any other failure to hew to the terms of the Act. Like the inspection and correction infractions, breaches of the statute with adverse consequences are addressed by specific terms governing relief:

> "In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> "(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> "(B) the costs of the action together with reasonable attorney fees as determined by the court." § 552a (g)(4).[1]

---

[1] The Privacy Act says nothing about standards of proof governing equitable relief that may be open to victims of adverse determinations or effects, although it may be that this inattention is explained by the general provisions for equitable relief within the Administrative Procedure Act (APA), 5 U. S. C. § 706. Indeed, the District Court relied on the APA in determining that it had jurisdiction to enforce the stipulated order prohibiting the Department of Labor from using Social Security numbers in multiparty captions. *Doe* v. *Herman,* Civ. Action No. 97–0043–B, 1998 WL 34194937, *5–*7 (DC Va., Mar. 18, 1998).

## III

Doe argues that subsection (g)(4)(A) entitles any plaintiff adversely affected by an intentional or willful violation to the $1,000 minimum on proof of nothing more than a statutory violation: anyone suffering an adverse consequence of intentional or willful disclosure is entitled to recovery. The Government claims the minimum guarantee goes only to victims who prove some actual damages. We think the Government has the better side of the argument.

To begin with, the Government's position is supported by a straightforward textual analysis. When the statute gets to the point of guaranteeing the $1,000 minimum, it not only has confined any eligibility to victims of adverse effects caused by intentional or willful actions, but has provided expressly for liability to such victims for "actual damages sustained." It has made specific provision, in other words, for what a victim within the limited class may recover. When the very next clause of the sentence containing the explicit provision guarantees $1,000 to a "person entitled to recovery," the simplest reading of that phrase looks back to the immediately preceding provision for recovering actual damages, which is also the Act's sole provision for recovering anything (as distinct from equitable relief). With such an obvious referent for "person entitled to recovery" in the plaintiff who sustains "actual damages," Doe's theory is immediately questionable in ignoring the "actual damages" language so directly at hand and instead looking for "a person entitled to recovery" in a separate part of the statute devoid of any mention either of recovery or of what might be recovered.

Nor is it too strong to say that Doe does ignore statutory language. When Doe reads the statute to mean that the United States shall be liable to any adversely affected subject of an intentional or willful violation, without more, he treats willful action as the last fact necessary to make the Government "liable," and he is thus able to describe anyone

to whom it is liable as entitled to the $1,000 guarantee. But this way of reading the statute simply pays no attention to the fact that the statute does not speak of liability (and consequent entitlement to recovery) in a freestanding, unqualified way, but in a limited way, by reference to enumerated damages.[2]

Doe's manner of reading "entitle[ment] to recovery" as satisfied by adverse effect caused by intentional or willful violation is in tension with more than the text, however. It is at odds with the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed. See, *e. g.*, W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 30 (5th ed. 1984). Doe, instead, identifies a person as entitled to recover without any reference to proof of damages, actual or otherwise. Doe might respond that it makes sense to speak of a privacy tort victim as entitled to recover without reference to damages because analogous common law would not require him to show particular items of injury in order to receive a dollar recovery. Traditionally, the common law has provided such victims with a claim for "general" damages, which for privacy and defamation torts are presumed damages: a monetary award calculated without reference to specific harm.[3]

---

[2] Indeed, if adverse effect of intentional or willful violation were alone enough to make a person entitled to recovery, then Congress could have conditioned the entire subsection (g)(4)(A) as applying only to "a person entitled to recovery." That, of course, is not what Congress wrote. As we mentioned before, Congress used the entitled-to-recovery phrase only to describe those entitled to the $1,000 guarantee, and it spoke of entitlement and guarantee only after referring to an individual's actual damages, indicating that "actual damages" is a further touchstone of the entitlement.

[3] 3 Restatement of Torts § 621, Comment *a* (1938) ("It is not necessary for the plaintiff [who is seeking general damages in an action for defamation] to prove any specific harm to his reputation or any other loss caused thereby"); 4 *id.*, § 867, Comment *d* (1939) (noting that damages are avail-

Such a rejoinder would not pass muster under the Privacy Act, however, because a provision of the Act not previously mentioned indicates beyond serious doubt that general damages are not authorized for a statutory violation. An uncodified section of the Act established a Privacy Protection Study Commission, which was charged, among its other jobs, to consider "whether the Federal Government should be liable for general damages incurred by an individual as the result of a willful or intentional violation of the provisions of sections 552a(g)(1)(C) or (D) of title 5."[4] § 5(c)(2)(B)(iii), 88 Stat. 1907. Congress left the question of general damages, that is, for another day. Because presumed damages are therefore clearly unavailable, we have no business treating just any adversely affected victim of an intentional or willful violation as entitled to recovery, without something more.

This inference from the terms of the Commission's mandate is underscored by drafting history showing that Congress cut out the very language in the bill that would have authorized any presumed damages.[5] The Senate bill would have authorized an award of "actual and general damages

------

able for privacy torts "in the same way in which general damages are given for defamation," without proof of "pecuniary loss [or] physical harm"); see also 3 Restatement (Second) of Torts § 621, Comment a (1976).

[4] The Commission ultimately recommended that the Act should "permit the recovery of special and general damages . . . but in no case should a person entitled to recovery receive less than the sum of $1,000 or more than the sum of $10,000 for general damages in excess of the dollar amount of any special damages." Personal Privacy in an Information Society: The Report of the Privacy Protection Study Commission 531 (July 1977).

[5] On this point, we do not understand JUSTICE GINSBURG's dissent to take issue with our conclusion that Congress explicitly rejected the proposal to make presumed damages available for Privacy Act violations. Instead, JUSTICE GINSBURG appears to argue only that Congress would have wanted nonpecuniary harm to qualify as actual damages under subsection (g)(4)(A). Post, at 635, n. 4 (plaintiff may recover for emotional distress "'that he proves to have been actually suffered by him'" (quoting 3 Restatement (Second) of Torts, supra, at 402, Comment b)). That issue, however, is not before us today. See n. 12, infra.

sustained by any person," with that language followed by the guarantee that "in no case shall a person entitled to recovery receive less than the sum of $1,000." S. 3418, 93d Cong., 2d Sess., § 303(c)(1) (1974). Although the provision for general damages would have covered presumed damages, see n. 3, *supra*, this language was trimmed from the final statute, subject to any later revision that might be recommended by the Commission. The deletion of "general damages" from the bill is fairly seen, then, as a deliberate elimination of any possibility of imputing harm and awarding presumed damages.[6] The deletion thus precludes any hope of a sound interpretation of entitlement to recovery without reference to actual damages.[7]

Finally, Doe's reading is open to the objection that no purpose is served by conditioning the guarantee on a person's being entitled to recovery. As Doe treats the text, Congress could have accomplished its object simply by providing that the Government would be liable to the individual for actual damages "but in no case . . . less than the sum of $1,000" plus fees and costs. Doe's reading leaves the reference to entitlement to recovery with no job to do, and it accordingly accomplishes nothing.[8]

---

[6] While theoretically there could also have been a third category, that of "nominal damages," it is implausible that Congress intended tacitly to recognize a nominal damages remedy after eliminating the explicit reference to general damages.

[7] JUSTICE SCALIA does not join this paragraph or footnote 8.

[8] JUSTICE GINSBURG responds that our reading is subject to a similar criticism: "Congress more rationally [c]ould have written: 'actual damages . . . but in no case shall a person who proves such damages [in any amount] receive less than $1,000.'" *Post*, at 630. Congress's use of the entitlement phrase actually contained in the statute, however, is explained by drafting history. The first bill passed by the Senate authorized recovery of both actual and general damages. See *supra*, at 622 and this page. At that point, when discussing eligibility for the $1,000 guarantee, it was reasonable to refer to plaintiffs with either sort of damages by the general term "a person entitled to recovery." When subsequent amendment limited recovery to actual damages by eliminating the general, no one appar-

## IV

There are three loose ends. Doe's argument suggests it would have been illogical for Congress to create a cause of action for anyone who suffers an adverse effect from intentional or willful agency action, then deny recovery without actual damages. But this objection assumes that the language in subsection (g)(1)(D) recognizing a federal "civil action" on the part of someone adversely affected was meant, without more, to provide a complete cause of action, and of course this is not so. A subsequent provision requires proof of intent or willfulness in addition to adverse effect, and if the specific state of mind must be proven additionally, it is equally consistent with logic to require some actual damages as well. Nor does our view deprive the language recognizing a civil action by an adversely affected person of any independent effect, for it may readily be understood as having a limited but specific function: the reference in § 552a(g)(1)(D) to "adverse effect" acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue. See *Director, Office of Workers' Compensation Programs* v. *Newport News Shipbuilding & Dry Dock Co.,* 514 U. S. 122, 126 (1995) ("The phrase 'person adversely affected or aggrieved' is a term of art used in many statutes to designate those who have standing to challenge or appeal an agency decision, within the agency or before the courts"); see also 5 U. S. C. § 702 (providing review of agency action under the Administrative Procedure Act to individuals who have been "adversely affected or aggrieved"). That is, an individual subjected to an adverse ef-

---

ently thought to delete the inclusive reference to entitlement. But this failure to remove the old language did not affect its reference to "actual damages," the term remaining from the original pair, "actual and general."

fect has injury enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act.[9]

Next, Doe also suggests there is something peculiar in offering some guaranteed damages, as a form of presumed damages not requiring proof of amount, only to those plaintiffs who can demonstrate actual damages. But this approach parallels another remedial scheme that the drafters of the Privacy Act would probably have known about. At common law, certain defamation torts were redressed by general damages but only when a plaintiff first proved some "special harm," *i. e.*, "harm of a material and generally of a pecuniary nature." 3 Restatement of Torts § 575, Comments *a* and *b* (1938) (discussing defamation torts that are "not actionable per se"); see also 3 Restatement (Second) of Torts § 575, Comments *a* and *b* (1976) (same). Plaintiffs claiming such torts could recover presumed damages only if they could demonstrate some actual, quantifiable pecuniary loss. Because the recovery of presumed damages in these cases was supplemental to compensation for specific harm, it was hardly unprecedented for Congress to make a guaranteed minimum contingent upon some showing of actual damages, thereby avoiding giveaways to plaintiffs with nothing

---

[9] Nor are we convinced by the analysis mentioned in the dissenting opinion in the Court of Appeals, that any plaintiff who can demonstrate that he was adversely affected by intentional or willful agency action is entitled to costs and reasonable attorney's fees under 5 U. S. C. § 552a(g)(4)(B), and is for that reason "a person entitled to recovery" under subsection (g)(4)(A). See 306 F. 3d 170, 188–189 (CA4 2002). Instead of treating damages as a recovery entitling a plaintiff to costs and fees, see, *e. g.*, 42 U. S. C. § 1988(b) (allowing "a reasonable attorney's fee" to a "prevailing party" under many federal civil rights statutes); *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 247–258 (1975) (discussing history of American courts' power to award fees and costs to prevailing plaintiffs), this analysis would treat costs and fees as the recovery entitling a plaintiff to minimum damages; it would get the cart before the horse.

more than "abstract injuries," *Los Angeles* v. *Lyons*, 461 U. S. 95, 101–102 (1983).[10]

In a final effort to save his claim, Doe points to a pair of statutes with remedial provisions that are worded similarly to § 552a(g)(4). See Tax Reform Act of 1976, § 1201(i)(2)(A), 90 Stat. 1665–1666, 26 U. S. C. § 6110(j)(2)(A); § 1202(e)(1), 90 Stat. 1687, 26 U. S. C. § 7217(c) (1976 ed., Supp. V) (repealed 1982); Electronic Communications Privacy Act of 1986, § 201, 100 Stat. 1866, 18 U. S. C. § 2707(c). He contends that legislative history of these subsequent enactments shows that Congress sometimes used language similar to 5 U. S. C. § 552a(g)(4) with the object of authorizing true liquidated damages remedies. See, *e. g.*, S. Rep. No. 94–938, p. 348 (1976) (discussing § 1202(e)(1) of the Tax Reform Act); S. Rep. No. 99–541, p. 43 (1986) (discussing § 201 of the Electronic Communications Privacy Act). There are two problems with this argument. First, as to § 1201(i)(2)(A) of the Tax Reform Act, the text is too far different from the language of the Privacy Act to serve as any sound basis for analogy; it does not include the critical limiting phrase "entitled to recovery." But even as to § 1202(e)(1) of the Tax Reform Act and § 201 of the Electronic Communications Privacy Act, the trouble with Doe's position is its reliance on the legislative histories of completely separate statutes passed well after the Privacy Act. Those of us who look to legislative history have been wary about expecting to find reliable interpretive help outside the record of the statute being construed, and we have said repeatedly that " 'subsequent legis-

---

[10] We also reject the related suggestion that the category of cases with actual damages not exceeding $1,000 is so small as to render the minimum award meaningless under our reading. It is easy enough to imagine pecuniary expenses that might turn out to be reasonable in particular cases but fall well short of $1,000: fees associated with running a credit report, for example, or the charge for a Valium prescription. Since we do not address the definition of actual damages today, see n. 12, *infra*, this challenge is too speculative to overcome our interpretation of the statute's plain language and history.

lative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment,'" *Solid Waste Agency of Northern Cook Cty.* v. *Army Corps of Engineers*, 531 U. S. 159, 170, n. 5 (2001) (quoting *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 118, n. 13 (1980)).[11]

## V

The "entitle[ment] to recovery" necessary to qualify for the $1,000 minimum is not shown merely by an intentional or willful violation of the Act producing some adverse effect. The statute guarantees $1,000 only to plaintiffs who have suffered some actual damages.[12] The judgment of the Fourth Circuit is affirmed.

*It is so ordered.*

JUSTICE GINSBURG, with whom JUSTICE STEVENS and JUSTICE BREYER join, dissenting.

In this Privacy Act suit brought under 5 U. S. C. § 552a(g)(1)(D), the Government concedes the alleged viola-

---

[11] In support of Doe's position, JUSTICE GINSBURG's dissent also cites another item of extratextual material, an interpretation of the Privacy Act that was published by the Office of Management and Budget in 1975 as a guideline for federal agencies seeking to comply with the Act. *Post*, at 633. The dissent does not claim that any deference is due this interpretation, however, and we do not find its unelaborated conclusion persuasive.

[12] The Courts of Appeals are divided on the precise definition of actual damages. Compare *Fitzpatrick* v. *IRS*, 665 F. 2d 327, 331 (CA11 1982) (actual damages are restricted to pecuniary loss), with *Johnson* v. *Department of Treasury, IRS*, 700 F. 2d 971, 972–974 (CA5 1983) (actual damages can cover adequately demonstrated mental anxiety even without any out-of-pocket loss). That issue is not before us, however, since the petition for certiorari did not raise it for our review. We assume without deciding that the Fourth Circuit was correct to hold that Doe's complaints in this case did not rise to the level of alleging actual damages. We do not suggest that out-of-pocket expenses are necessary for recovery of the $1,000 minimum; only that they suffice to qualify under any view of actual damages.

tion and does not challenge the District Court's finding that the agency in question (the Department of Labor) acted in an intentional or willful manner. Tr. of Oral Arg. 35; Brief for Respondent (I). Nor does the Government here contest that Buck Doe, the only petitioner before us, suffered an "adverse effect" from the Privacy Act violation. The case therefore cleanly presents a sole issue for this Court's resolution: Does a claimant who has suffered an "adverse effect"—in this case and typically, emotional anguish—from a federal agency's intentional or willful Privacy Act violation, but has proved no "actual damages" beyond psychological harm, qualify as "a person entitled to recovery" within the meaning of § 552a(g)(4)(A)? In accord with Circuit Judge Michael, who disagreed with the Fourth Circuit's majority on the need to show actual damages, I would answer that question yes.

Section 552a(g)(4)(A) affords a remedy for violation of a Privacy Act right safeguarded by § 552a(g)(1)(C) or (D). The words "a person entitled to recovery," as used in § 552a(g)(4)(A)'s remedial prescription, are most sensibly read to include anyone experiencing an "adverse effect" as a consequence of an agency's intentional or willful commission of a Privacy Act violation of the kind described in § 552a(g)(1)(C) or (D). The Act's text, structure, and purpose warrant this construction, under which Doe need not show a current pecuniary loss, or "actual damages" of some other sort, to recover the minimum award of $1,000, attorney's fees, and costs.

I

Section 552a(g)(4) provides:

> "In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—

"(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

"(B) the costs of the action together with reasonable attorney fees as determined by the court." .

The opening clause of § 552a(g)(4) prescribes two conditions on which liability depends. *First*, the claimant's suit must lie under § 552a(g)(1)(C) or (D); both provisions require an agency action "adverse" to the claimant. Section 552a(g)(1)(C) authorizes a civil action when an agency "fails to maintain [a] record concerning [an] individual with [the] accuracy, relevance, timeliness, and completeness" needed to determine fairly "the qualifications, character, rights, or opportunities of, or benefits to the individual," if the agency's lapse yields a "determination . . . *adverse to the individual.*" (Emphasis added.) Section 552a(g)(1)(D) allows a civil action when an agency "fails to comply with [a] provision of [§ 552a], or [a] rule promulgated thereunder, in such a way as to have *an adverse effect on an individual.*" (Emphasis added.) *Second*, the agency action triggering the suit under § 552a(g)(1)(C) or (D) must have been "intentional or willful." § 552a(g)(4). If those two liability-determining conditions are satisfied (suit under § 552a(g)(1)(C) or (D); intentional or willful conduct), the next clause specifies the consequences: "[T]he United States shall be liable to the individual in an amount equal to the sum of" the recovery allowed under § 552a(g)(4)(A) and the costs and fees determined under § 552a(g)(4)(B).

The terms "actual damages" and "person entitled to recovery" appear only in the text describing the relief attendant upon the agency's statutory dereliction; they do not appear in the preceding text describing the conditions on which the agency's liability turns. Most reasonably read, § 552a(g)(4)(A) does not wend back to add "actual damages" as a third liability-determining element. See *Davis* v. *Mich-*

*igan Dept. of Treasury*, 489 U. S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

Nor, when Congress used different words, here "actual damages sustained by the individual" and "a person entitled to recovery," should a court ordinarily equate the two phrases. Had Congress intended the meaning that the Government urged upon this Court, one might have expected the statutory instruction to read, not as it does: "actual damages . . . but in no case shall a person entitled to recovery receive less than . . . $1,000." Instead, Congress more rationally would have written: "actual damages . . . but in no case shall a person who proves such damages [in any amount] receive less than $1,000." Cf. *Barnhart v. Sigmon Coal Co.*, 534 U. S. 438, 454 (2002) (" 'We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.' " (quoting *Russello v. United States*, 464 U. S. 16, 23 (1983))). Just as the words "person entitled to recovery" suggest greater breadth than "individual [who has sustained] actual damages," so the term "recovery" ordinarily encompasses more than " 'get[ting] or win[ning] back,' " Brief for Respondent 26 (quoting Webster's Third New International Dictionary 1898 (1966)). "Recovery" generally embraces "[t]he obtain[ing] of a right to something (esp. damages) by a judgment or decree" and "[a]n amount awarded in or collected from a judgment or decree." Black's Law Dictionary 1280 (7th ed. 1999). So comprehended, "recovery" here would yield a claimant who suffers an "adverse effect" from an agency's intentional or willful § 552a(g)(1)(C) or (D) violation a minimum of $1,000 plus costs and attorney's fees, whether or not the claimant proves "actual damages."

"It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if

it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc.* v. *Andrews,* 534 U. S. 19, 31 (2001) (quoting *Duncan* v. *Walker,* 533 U. S. 167, 174 (2001)). The Court's reading of § 552a(g)(4) is hardly in full harmony with that principle. Under the Court's construction, the words "a person entitled to recovery" have no office, see *ante,* at 623, n. 8, and the liability-determining element "adverse effect" becomes superfluous, swallowed up by the "actual damages" requirement.[1] Further, the Court's interpretation renders the word "recovery" nothing more than a synonym for "actual damages," and it turns the phrase "shall be liable" into "may be liable." In part because it fails to " 'give effect . . . to every clause and word' " Congress wrote, *United States* v. *Menasche,* 348 U. S. 528, 538–539 (1955) (quoting *Montclair* v. *Ramsdell,* 107 U. S. 147, 152 (1883)), the Court's reading of § 552a(g)(4) is at odds with the interpretation prevailing in the Federal Circuits.

I would adhere to the interpretation of the key statutory terms advanced by most courts of appeals. As interpreted by those courts, § 552a(g)(4) authorizes a minimum $1,000 award that need not be hinged to proof of actual damages. See *Orekoya* v. *Mooney,* 330 F. 3d 1, 5 (CA1 2003) (§ 552a(g)(4) makes available "[b]oth 'actual damages sustained by the individual' and statutory minimum damages of $1,000"); *Wilborn* v. *Department of Health and Human*

---

[1] The Court interprets "the reference in § 552a(g)(1)(D) to 'adverse effect' . . . as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Ante,* at 624. Under the Court's reading, § 552a(g)(1)(D) "open[s] the courthouse door" to individuals "adversely affected" by an intentional or willful agency violation of the Privacy Act, *ante,* at 624–625, while § 552a(g)(4) bars those individuals from recovering anything if they do not additionally show actual damages. See *infra,* at 635–636. In other words, the open door for plaintiffs like Buck Doe is an illusion: what one hand opens, the other shuts.

*Servs.*, 49 F. 3d 597, 603 (CA9 1995) ("statutory minimum of $1,000" under § 552a(g)(4)(A) meant to provide plaintiffs "with 'no provable damages' the incentive to sue" (quoting *Fitzpatrick* v. *IRS*, 665 F. 2d 327, 330 (CA11 1982))); *Waters* v. *Thornburgh*, 888 F. 2d 870, 872 (CADC 1989) (If a plaintiff establishes that she suffered an "adverse effect" from an "intentional or willful" violation of § 552a(e)(2), "the plaintiff is entitled to the greater of $1,000 or the actual damages sustained." (internal quotation marks omitted)); *Johnson* v. *Department of Treasury, IRS*, 700 F. 2d 971, 977, and n. 12 (CA5 1983) (Even without proof of actual damages, "[t]he statutory minimum of $1,000 [under § 552a(g)(4)(A)], of course, is recoverable."); *Fitzpatrick*, 665 F. 2d, at 331 ("Because [the plaintiff] proved only that he suffered a general mental injury from the disclosure, he could not recover beyond the statutory $1,000 minimum damages, costs, and reasonable attorneys' fees [under § 552a(g)(4)]."); cf. *Quinn* v. *Stone*, 978 F. 2d 126, 131 (CA3 1992) ("adverse effect" but not "actual damages" is a "necessary" element "to maintain a suit for damages under the catch-all provision of 5 U. S. C. § 552a(g)(1)(D)" (internal quotation marks omitted)); *Parks* v. *IRS*, 618 F. 2d 677, 680, 683 (CA10 1980) (plaintiffs seeking "the award of a minimum of $1,000 damages together with attorney's fees" under § 552a(g)(4) state a claim by alleging the agency acted intentionally or willfully when it illegally disclosed protected information, causing "psychological damage or harm"). But see *Hudson* v. *Reno*, 130 F. 3d 1193, 1207 (CA6 1997) ("A final basis for affirming the District Court's decision with respect to [the plaintiff]'s claims under the Privacy Act is her failure to show 'actual damages,' as required by [§ 552a(g)(4)]."), overruled in part on other grounds, *Pollard* v. *E. I. du Pont de Nemours & Co.*, 532 U. S. 843 (2001); *Molerio* v. *FBI*, 749 F. 2d 815, 826 (CADC 1984) ("This cause of action under [§§ 552a(g)(1)(C) and (g)(4)(A)] requires, however, not merely an intentional or

willful failure to maintain accurate records, but also 'actual damages sustained' as a result of such failure.").

The view prevailing in the Federal Circuits is in sync with an Office of Management and Budget (OMB) interpretation of the Privacy Act published in 1975, the year following the Act's adoption. Congress instructed OMB to "develop guidelines and regulations for the use of agencies in implementing the provisions of [the Privacy Act]." § 6, 88 Stat. 1909. Just over six months after the Act's adoption, OMB promulgated Privacy Act Guidelines. 40 Fed. Reg. 28949 (1975). The Guidelines speak directly to the issue presented in this case. They interpret §§ 552a(g)(1)(C), (D), and (g)(4) to convey:

> "When the court finds that an agency has acted willfully or intentionally in violation of the Act in such a manner as to have an adverse effect upon the individual, the United States will be required to pay
> "Actual damages or $1,000, whichever is greater
> "Court costs and attorney fees." *Id.*, at 28970.

The Guidelines have been amended several times since 1975, but OMB's published interpretation of § 552a(g)(4) has remained unchanged. See *id.*, at 56741; 44 Fed. Reg. 23138 (1979); 47 Fed. Reg. 21656 (1982); 48 Fed. Reg. 15556 (1983); 49 Fed. Reg. 12338 (1984); 50 Fed. Reg. 52738 (1985); 52 Fed. Reg. 12990 (1987); 54 Fed. Reg. 25821 (1989); 58 Fed. Reg. 36075 (1993); 59 Fed. Reg. 37914 (1994); 61 Fed. Reg. 6435 (1996).[2]

---

[2] In briefing this case, the Government noted a communication to the Office of the Solicitor General from an unnamed OMB official conveying that OMB does not now "interpret its Guideline to require the payment of $1000 to plaintiffs who have sustained no actual damages from a violation of the Act." Brief for Respondent 47–48. Such an informal communication cannot override OMB's contemporaneous, long-published construction of § 552a(g)(4); cf. *Bowen* v. *Georgetown Univ. Hospital*, 488 U. S. 204, 212 (1988) ("We have never applied [deference] to agency litigating positions that are wholly unsupported by regulations, rulings, or adminis-

## II

The purpose and legislative history of the Privacy Act, as well as similarly designed statutes, are in harmony with the reading of § 552a(g)(4) most federal judges have found sound. Congress sought to afford recovery for "*any* damages" resulting from the "willful or intentional" violation of "any individual's rights under th[e] Act." § 2(b)(6), 88 Stat. 1896 (emphasis added). Privacy Act violations commonly cause fear, anxiety, or other emotional distress—in the Act's parlance, "adverse effects." Harm of this character must, of course, be proved genuine.[3] In cases like Doe's, emotional distress is generally the only harm the claimant suffers, *e. g.*, the identity theft apprehended never materializes.[4]

---

trative practice."); *INS* v. *Cardoza-Fonseca,* 480 U. S. 421, 446, n. 30 (1987) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference,' than a consistently held agency view." (quoting *Watt* v. *Alaska,* 451 U. S. 259, 273 (1981))).

[3] Circuit Judge Michael, who dissented from the Fourth Circuit's judgment as to petitioner Buck Doe but agreed with his colleagues on this point, noted: "[A]dverse effects must be proven rather than merely presumed . . . ." 306 F. 3d 170, 187 (2002) (opinion concurring in part and dissenting in part). Doe had declared in his affidavit that "no amount of money could compensate [him] for worry and fear of not knowing when someone would use [his] name and Social Security number to establish credit, a new identity, change [his] address, use [his] checking account or even get credit cards." App. 15. Doe's several coplaintiffs, against whom summary judgment was entered and unanimously affirmed on appeal, made no such declaration.

[4] The Court asserts that Doe's reading of § 552a(g)(4)(A) "is at odds with the traditional understanding that tort recovery requires . . . proof of some harm for which damages can reasonably be assessed." *Ante,* at 621. Although that understanding applies to common negligence actions, see W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 165 (5th ed. 1984) (cited *ante,* at 621), it is not the black letter rule for privacy actions. See 3 Restatement (Second) of Torts § 652H, p. 401 (1976) ("One who has established a cause of action for invasion of his privacy is entitled to recover damages for . . . his mental distress proved to have been suffered if it is of a kind that normally results from such an

It bears emphasis that the Privacy Act does not authorize injunctive relief when suit is maintained under § 552a(g)(1)(C) or (D). Injunctive relief, and attendant counsel fees and costs, are available under the Act in two categories of cases: suits to amend a record, § 552a(g)(2), and suits for access to a record, § 552a(g)(3). But for cases like Doe's, brought under § 552a(g)(1)(C) or (D), see *supra*, at 629, only monetary relief is available. Hence, in the Government's view, if a plaintiff who sues under § 552a(g)(1)(C) or (D) fails to prove actual damages, "he will not be entitled to attorney's fees." Brief for Respondent 39 ("[T]he Privacy Act permits an award only of 'reasonable' attorney's fees. The most critical factor in determining the reasonableness of an attorney fee award is the degree of success obtained. For a plaintiff who enjoys no success in prosecuting his claim, 'the only reasonable fee' is 'no fee at all.'" (quoting *Farrar* v. *Hobby*, 506 U. S. 103, 115 (1992) (citations omitted))).

The Court's reading of § 552a(g)(4) to require proof of "actual damages," however small, in order to gain the $1,000 statutory minimum, ironically, invites claimants to arrange or manufacture such damages. The following colloquy from oral argument is illustrative.

> Court: "Suppose . . . Doe said, 'I'm very concerned about the impact of this on my credit rating, so I'm going to [pay] $10 to a . . . credit reporting company to find out whether there's been any theft of my identity, $10.' Would there then be a claim under this statute for actual damages?"
>
> Counsel for respondent Secretary of Labor Chao: "[T]here would be a question . . . whether that was a reasonable response to the threat, but in theory, an ex-

invasion . . . ."); *id.*, at 402, Comment *b* ("The plaintiff may also recover damages for emotional distress or personal humiliation that he proves to have been actually suffered by him, if it is of a kind that normally results from such an invasion [of privacy] and it is normal and reasonable in its extent.").

pense like that could qualify as pecuniary harm and, thus, is actual damages." Tr. of Oral Arg. 43 (internal quotation marks added).

Indeed, the Court itself suggests that "fees associated with running a credit report" or "the charge for a Valium prescription" might suffice to prove "actual damages." *Ante,* at 626, n. 10. I think it dubious to insist on such readily created costs as essential to recovery under § 552a(g)(4). Nevertheless, the Court's examples of what might qualify as "actual damages" indicate that its disagreement with the construction of the Act prevailing in the Circuits, see *supra,* at 631–632, is ethereal.

The Government, although recognizing that "actual damages" may be slender and easy to generate, fears depletion of the federal fisc were the Court to adopt Doe's reading of § 552a(g)(4). Brief for Respondent 22–23, n. 5. Experience does not support those fears. As the Government candidly acknowledged at oral argument: "[W]e have not had a problem with enormous recoveries against the Government up to this point." Tr. of Oral Arg. 35. No doubt mindful that Congress did not endorse massive recoveries, the District Court in this very case denied class-action certification, see App. to Pet. for Cert. 65a, and other courts have similarly refused to certify suits seeking damages under § 552a(g)(4) as class actions. See, *e. g., Schmidt* v. *Department of Veterans Affairs,* 218 F. R. D. 619, 637 (ED Wis. 2003) (denying class certification on ground that each individual would have to prove he "suffered an adverse effect as a result of the [agency]'s failure to comply with [the Act]"); *Lyon* v. *United States,* 94 F. R. D. 69, 76 (WD Okla. 1982) ("In Privacy Act damages actions, questions affecting only individual members greatly outweigh questions of law and fact common to the class."). Furthermore, courts have disallowed the runaway liability that might ensue were they to count every single wrongful disclosure as a discrete basis for a $1,000 award. See, *e. g., Tomasello* v. *Rubin,* 167 F. 3d 612, 618 (CADC 1999) (holding that 4,500 "more-or-less contempora-

neous transmissions of the same record" by facsimile consti-
tuted one "act," entitling the plaintiff to a single recovery of
$1,000 in damages (internal quotation marks omitted)).

The text of §552a(g)(4), it is undisputed, accommodates
two concerns. Congress sought to give the Privacy Act
teeth by deterring violations and providing remedies when
violations occur. At the same time, Congress did not want
to saddle the Government with disproportionate liability.
The Senate bill advanced the former concern; the House bill
was more cost conscious. The House bill, as reported by
the Committee on Government Operations and passed by the
House, provided:

> "In any suit brought under the provisions of subsec-
> tion (g)(1)(B) or (C) of this section in which the court
> determines that the agency acted in a manner which was
> willful, arbitrary, or capricious, the United States shall
> be liable to the individual in an amount equal to the
> sum of—
>
> "(A) actual damages sustained by the individual as a
> result of the refusal or failure; and
>
> "(B) the costs of the action together with reasonable
> attorney fees as determined by the court." H. R. 16373,
> 93d Cong., 2d Sess., §552a(g)(3) (1974), reprinted in Leg-
> islative History of the Privacy Act of 1974: Source Book
> on Privacy, p. 288 (Joint Comm. Print compiled for the
> Senate and House Committees on Government Opera-
> tions) (hereinafter Source Book).

The Senate bill, as amended and passed, provided:

> "The United States shall be liable for the actions or
> omissions of any officer or employee of the Government
> who violates the provisions of this Act, or any rule, reg-
> ulation, or order issued thereunder in the same manner
> and to the same extent as a private individual under like
> circumstances to any person aggrieved thereby in an
> amount equal to the sum of—

> "(1) any actual and general damages sustained by any person but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> "(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court." S. 3418, 93d Cong., 2d Sess., § 303(c) (1974), reprinted in Source Book 371.

The provision for monetary relief ultimately enacted, § 552a(g)(4), represented a compromise between the House and Senate versions. The House bill's culpability standard ("willful, arbitrary, or capricious"), not present in the Senate bill, accounts for § 552a(g)(4)'s imposition of liability only when the agency acts in an "intentional or willful" manner. That culpability requirement affords the Government some insulation against excessive liability.[5] On the other hand, the enacted provision adds to the House allowance of "actual damages" only, the Senate specification that "in no case shall a person entitled to recovery receive less than the sum of $1,000 . . . ." § 552a(g)(4)(A). The $1,000 minimum, as earlier developed, *supra*, at 634, enables individuals to recover

---

[5] Petitioner Doe recognizes that "the 'intentional [or] willful' level of culpability a Privacy Act plaintiff must demonstrate is a formidable barrier." Brief for Petitioner 29; Reply Brief 1 ("Congress and commentators agree [the 'intentional or willful' qualification] is a formidable obstacle to recovery under the Act."). In this Court and case, as earlier noted, *supra*, at 627–628, the Government does not challenge the finding that the Department of Labor's violation of the Act was "intentional or willful." Tr. of Oral Arg. 35; see App. to Pet. for Cert. 96a–97a (Characterizing the Department of Labor's actions as "intentional and willful," the Magistrate Judge observed: "The undisputed evidence shows that the Department took little, if any, action to see that it complied with the Privacy Act. . . . Several of the Administrative Law Judges responsible for sending out the multi-captioned hearing notices testified that they had received no training on the Privacy Act."). Because the "intentional or willful" character of the agency's conduct is undisputed here, the Court is not positioned to give that issue the full consideration it would warrant were the issue the subject of dispute.

for genuine, albeit nonpocketbook, harm, and gives persons thus adversely affected an incentive to sue to enforce the Act.[6]

Congress has used language similar to § 552a(g)(4) in other privacy statutes. See 18 U. S. C. § 2707(c);[7] 26 U. S. C. § 6110(j)(2);[8] 26 U. S. C. § 7217(c) (1976 ed., Supp. V).[9] These

---

[6] The Court places great weight on Congress' establishment of a Privacy Protection Study Commission, and its charge to the Commission to consider, among many other things, "whether the Federal Government should be liable for general damages incurred by an individual as the result of a willful or intentional violation of [§ 552a(g)(1)(C) or (D)]." *Ante*, at 622 (internal quotation marks omitted). This less than crystalline reference to the Commission, however, left unaltered § 552a(g)(4)(A)'s embracive term "a person entitled to recovery," words the Court must read out of the statute to render its interpretation sensible. See *ante*, at 623–624, n. 8.

[7] Section 2707(c), concerning unauthorized access to electronic communications, provides:

"The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, *but in no case shall a person entitled to recover receive less than the sum of $1,000.* If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court." (Emphasis added.)

[8] Section 6110(j)(2) provides:

"In any suit brought under the provisions of paragraph (1)(A) in which the Court determines that an employee of the Internal Revenue Service intentionally or willfully failed to delete in accordance with subsection (c), or in any suit brought under subparagraph (1)(B) in which the Court determines that an employee intentionally or willfully failed to act in accordance with subsection (g) or (i)(4)(B), the United States shall be liable to the person in an amount equal to the sum of—

"(A) actual damages sustained by the person *but in no case shall a person be entitled to receive less than the sum of $1,000,* and

"(B) the costs of the action together with reasonable attorney's fees as determined by the Court." (Emphasis added.)

[9] Section 7217(c), which was repealed in 1982, provided:

"In any suit brought under the provisions of subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

other statutes have been understood to permit recovery of the $1,000 statutory minimum despite the absence of proven actual damages. See H. R. Rep. No. 99–647, p. 74 (1986) ("Damages [under 18 U. S. C. § 2707(c)] include actual damages, any lost profits but in no case less than $1,000."); S. Rep. No. 99–541, p. 43 (1986) ("[D]amages under [18 U. S. C. § 2707(c)] includ[e] the sum of actual damages suffered by the plaintiff and any profits made by the violator as the result of the violation . . . with minimum statutory damages of $1,000 . . . and . . . reasonable attorney's fees and other reasonable litigation costs."); H. R. Conf. Rep. No. 94–1515, p. 475 (1976) (Title 26 U. S. C. § 6110(j)(2) "creates a civil remedy for intentional or willful failure of the IRS to make required deletions or to follow the procedures of this section, including minimum damages of $1,000 plus costs."); S. Rep. No. 94–938, p. 348 (1976) ("Because of the difficulty in establishing in monetary terms the damages sustained by a taxpayer as the result of the invasion of his privacy caused by an unlawful disclosure of his returns or return information, [26 U. S. C. § 7217(c)] provides that these damages would, in no event, be less than liquidated damages of $1,000 for each disclosure."). See also *Johnson* v. *Sawyer*, 120 F. 3d 1307, 1313 (CA5 1997) ("Pursuant to [26 U. S. C.] § 7217, a plaintiff is entitled to his actual damages sustained as a result of an unauthorized disclosure (including punitive damages for willful or grossly negligent disclosures) or to liquidated damages of $1,000 per such disclosure, whichever is greater, as well as the costs of the action."); *Rorex* v. *Traynor*, 771 F. 2d 383, 387–388 (CA8 1985) ("We do not think

---

"(1) actual damages sustained by the plaintiff as a result of the unauthorized disclosure of the return or return information and, in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, *but in no case shall a plaintiff entitled to recovery receive less than the sum of $1,000* with respect to each instance of such unauthorized disclosure; and

"(2) the costs of the action." (Emphasis added.)

that hurt feelings alone constitute actual damages compensable under [26 U. S. C. § 7217(c)]. Accordingly, the jury's award of $30,000 in actual damages must be vacated. The taxpayers are each entitled to the statutory minimum award of $1,000."). As Circuit Judge Michael, dissenting from the Fourth Circuit's disposition of Doe's claim, trenchantly observed: "[T]he remedy of minimum statutory damages is a fairly common feature of federal legislation. . . . In contrast, I am not aware of any statute in which Congress has provide[d] for a statutory minimum to actual damages." 306 F. 3d 170, 195 (2002) (opinion concurring in part and dissenting in part) (internal quotation marks omitted).

\* \* \*

Doe has standing to sue, the Court agrees, based on "allegations that he was 'torn . . . all to pieces' and 'greatly concerned and worried' because of the disclosure of his Social Security number and its potentially 'devastating' consequences." *Ante*, at 617–618 (some internal quotation marks omitted). Standing to sue, but not to succeed, the Court holds, unless Doe also incurred an easily arranged out-of-pocket expense. See *ante*, at 626, n. 10.[10] In my view, Congress gave Privacy Act suitors like Doe not only standing to sue, but the right to a recovery if the fact trier credits their claims of emotional distress brought on by an agency's intentional or willful violation of the Act. For the reasons stated in this dissenting opinion, which track the reasons expressed by Circuit Judge Michael dissenting in part in the Fourth Circuit, I would reverse the judgment of the Court of Appeals.

JUSTICE BREYER, dissenting.

I agree with JUSTICE GINSBURG and join her opinion. I emphasize JUSTICE GINSBURG's view that the statute (as

---

[10] Cf. *ante*, at 627, n. 12 (suggesting that a nonpecuniary, but somehow heightened "adverse effect" ("demonstrated mental anxiety") might do).

we interpret it) is not likely to produce "massive recoveries" against the Government—recoveries that "Congress did not endorse." *Ante*, at 636 (dissenting opinion). I concede that the statute would lead to monetary recoveries whenever the Government's violation of the Privacy Act of 1974 is "intentional or willful." 5 U. S. C. § 552a(g)(4). But the Government at oral argument pointed out that the phrase

> "'intentional or willful' has been construed by the lower courts as essentially a term of art, and the prevailing test . . . is . . . akin to the standard that would prevail in a *Bivens* action[:] . . . '[C]ould a reasonable officer in this person's position have believed what he was doing was legal?'" Tr. of Oral Arg. 33–34 (internal quotation marks added).

That is to say, the lower courts have interpreted the phrase restrictively, essentially applying it where the Government's violation of the Act is in bad faith. See, *e. g., Albright* v. *United States,* 732 F. 2d 181, 189 (CADC 1984) (the term means "without grounds for believing [an action] to be lawful, or by flagrantly disregarding others' rights under the Act"); see also, *e. g., Scrimgeour* v. *IRS,* 149 F. 3d 318, 326 (CA4 1998) (same); *Wisdom* v. *Department of Housing and Urban Development,* 713 F. 2d 422, 424–435 (CA8 1983) (same); *Pippinger* v. *Rubin,* 129 F. 3d 519, 530 (CA10 1997) (same); *Hudson* v. *Reno,* 130 F. 3d 1193, 1205 (CA6 1997) (similar), overruled in part on other grounds, *Pollard* v. *E. I. du Pont de Nemours & Co.,* 532 U. S. 843, 848 (2001); *Moskiewicz* v. *Department of Agriculture,* 791 F. 2d 561, 564 (CA7 1986) (similar); *Wilborn* v. *Department of Health and Human Servs.,* 49 F. 3d 597, 602 (CA9 1995) (similar). But cf. *Covert* v. *Harrington,* 876 F. 2d 751, 757 (CA9 1989) (apparently applying a broader standard).

Given this prevailing interpretation, the Government need not fear liability based upon a technical, accidental, or good-faith violation of the statute's detailed provisions. Hence

JUSTICE GINSBURG's interpretation would not risk injury to the public fisc. And I consequently find no support in any of the statute's basic purposes for the majority's restrictive reading of the damages provision.