**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1488
_____

DAVID FRANK CAMPEAU, JR.,
                                        Appellant

v.

SOCIAL SECURITY ADMINISTRATION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-13-cv-05396)
District Judge:  Honorable Stewart Dalzell
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2014

Before:  JORDAN, COWEN and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 8, 2014)

_____

OPINION
_____

PER CURIAM

        David Frank Campeau, Jr., appeals from the District Court's dismissal of his

complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  We will affirm.

Campeau filed suit against the Social Security Administration ("SSA") alleging that it failed to properly treat his request to amend his social security records and failed to provide him with access to those records in violation of the Privacy Act of 1974, 5 U.S.C. § 552a. His claims arise from his attempt to amend his records to include what he refers to as a "Simple Social Security Trust" and an "indenture." Campeau did not attach a copy of this document to his complaint or allege its contents, but he filed suit in his purported capacity as "Steward for the Kingdom of Israel." Other courts have addressed claims by similarly self-professed "Stewards of Israel" based on purported "Social Security Trusts" and "indentures," which other individuals have sought to place in their records in furtherance of an income tax liability avoidance theory that those other courts have rejected as "frivolous." E.g., Crummey v. Soc. Sec. Admin., 794 F. Supp. 2d 46, 56 (D.D.C. 2011) (addressing similar Privacy Act claim and collecting cases), aff'd, No. 11-5231, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012).

Campeau alleges that he mailed to the SSA a written request to include this "indenture" in his file but that the SSA never responded. He further alleges that, some seven months later, he drove to the SSA's headquarters in Baltimore, Maryland, and requested to review his records in person to ascertain whether the SSA had received and granted his request. According to Campeau, a Security Director at the SSA's headquarters directed him to an SSA field office located on Reistertown Road in

Baltimore, but an agent at that office told him that he did not know where the records were located and advised Campeau to make a written or online request under the Freedom of Information Act ("FOIA").  Campeau does not allege that he followed that advice, and he instead filed this action almost two years later asserting the Privacy Act claims (but no claims under FOIA) discussed below.  On the SSA's motion, the District Court dismissed Campeau's complaint under Rule 12(b)(6).  Campeau appeals.[1]

## II.

We agree that the District Court properly dismissed Campeau's complaint but, because our analysis differs somewhat, we will independently address Campeau's claims in some detail.  Three of Campeau's four claims relate to his attempt to amend his records as described above.  In particular, he claims that the SSA:  (1) failed to acknowledge receipt of his request within ten days as required by 5 U.S.C. § 552a(d)(2)(A); (2) failed to make a determination of whether to amend his records as required by 5 U.S.C. § 552a(d)(2)(B); and (3) failed to permit him to seek review of any

---

[1] We have jurisdiction under 28 U.S.C. § 1291.  We review the dismissal of a complaint under Rule 12(b)(6) de novo, and we consider whether, accepting the factual allegations in the complaint as true, the complaint states a plausible entitlement to relief.  See Mayer v. Belichick, 605 F.3d 223, 229-30 (3d Cir. 2010).  In this case, the SSA attached evidentiary material to its motion to dismiss, and the District Court expressly relied on that material without converting the SSA's motion into one for summary judgment as required by Rule 12(d).  The District Court's failure to do so is subject to harmless error analysis, however, see SBRMCOA, LLC v. Bayside Resort, Inc., 707 F.3d 267, 272-73 (3d Cir. 2013), and its error was harmless because Campeau's complaint is subject to dismissal on its face.  We further note that, although Campeau argued below that the District Court was required to convert the SSA's motion into one for summary judgment

3

denial of his request as required by 5 U.S.C. § 552a(d)(3).

The District Court concluded that the first of these claims is barred by the Privacy Act's two-year statute of limitation, 5 U.S.C. § 552a(g)(5), and that ruling is clearly correct. Section 552a(d)(2)(A) required the SSA to acknowledge Campeau's request in writing "not later than 10 days (excluding [weekends and holidays]) after the date of receipt." Campeau alleges that the SSA received his request on February 10, 2011, so (according to his allegations) the SSA was required to acknowledge it by February 24, 2011. Campeau was thus well aware of this alleged injury well more than two years before filing suit on September 13, 2013, and his arguments to the contrary are baseless.[2]

Campeau's remaining amendment-related claims sought both monetary damages and injunctive relief. Monetary damages are potentially available under 5 U.S.C. § 552a(g)(1)(D), which permits a person to seek damages under 5 U.S.C. § 552(a)(g)(4) if a violation of the Privacy Act or regulations promulgated thereunder had an "adverse effect" on that person. The District Court concluded that all of Campeau's claims for damages fail because he failed to allege an "adverse effect," and we again agree.

"[T]he reference in § 552a(g)(1)(D) to 'adverse effect' acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing[.]" Doe v. Chao, 540 U.S. 614, 624 (2004). Campeau argues that

_____

before considering its evidence, he has not raised that issue on appeal.

[2] We need not address whether the Privacy Act's statute of limitations is jurisdictional because, even if it is not, Campeau has not stated a basis to equitably toll this claim.

the SSA's alleged failure to determine his request or provide him with review had an adverse effect on him because he incurred $300 in expenses in driving to the SSA's headquarters in Baltimore to review his records and ascertain whether the SSA had granted his request to amend them. Campeau's purely voluntary decision to travel to Baltimore does not give him standing to seek damages under this statute because this "self-inflicted injur[y] [is] not fairly traceable to the Government's purported activities." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1152 (2013).

Campeau also requested an injunction requiring the SSA to amend his records under 5 U.S.C. § 552a(g)(2)(A), by adding the "indenture" to his file. Campeau alleged in his complaint that he did not know whether the SSA did so, and he sought this remedy in the alternative in case it did not. After the SSA represented in its motion to dismiss that it had no record of having received Campeau's request, Campeau argued that the SSA must not have amended his records and that he should be allowed to amend his complaint to assert an affirmative claim for an injunction requiring it to do so. The District Court concluded that Campeau failed to exhaust his administrative remedies before seeking such an injunction because, inter alia, he failed to allege that his records are materially inaccurate or incomplete in any way. That conclusion is correct and, exhaustion aside, it means that Campeau has failed to state a claim for statutory relief.[3]

_____

[3] As the District Court noted, district courts in this circuit have reached different conclusions about whether the Privacy Act exhaustion requirement we identified in Quinn v. Stone, 978 F.2d 126, 137-38 (3d Cir. 1992), is jurisdictional. Even if the

5

The Privacy Act permits individuals to request amendment of their records and then seek judicial review of an agency's refusal to amend "any portion thereof which the individual believes is not accurate, relevant, timely, or complete." 5 U.S.C. § 552a(d)(2)(B). Campeau has never alleged why he believes it is necessary to add his so-called "indenture" to his social security records in order to make them accurate or complete. To the contrary, as explained above, he has not provided a copy of the "indenture" or otherwise alleged its contents. As also explained above, the little information that Campeau has provided suggests (though we do not decide on this limited record) that his requested amendment may be in furtherance of a tax liability avoidance theory that other courts have rejected as "frivolous." E.g., Crummey, 794 F. Supp. 2d at 56 (granting summary judgment on similar Privacy Act claim where plaintiff "failed to present even a scintilla of competent evidence suggesting that the SSA's records are, in actuality, materially inaccurate or incomplete").

Although this case is at the pleading stage, Campeau still was required to allege at least some facts plausibly suggesting that his records are inaccurate or incomplete without the "indenture" he seeks to add. Campeau has not alleged any such facts and— even though the SSA raised this point in its motion to dismiss, and even though Campeau

---

exhaustion requirement is jurisdictional, we can reach the sufficiency of Campeau's complaint without impermissibly exercising "hypothetical jurisdiction" because the exhaustion requirement's jurisdictional character would derive from a statute and not from Article III. See Jordon v. Att'y Gen., 424 F.3d 320, 325 n.8 (3d Cir. 2005). Thus, we need not address the parties' exhaustion-related disputes, including their factual

6

sought to amend his complaint as noted above—he still has raised nothing suggesting that he could do so in the future. Thus, we are satisfied both that Campeau has failed to state a claim in this regard and that any amendment would be futile.

Campeau's final claim is that the SSA violated 5 U.S.C. § 552a(d)(1) and 20 C.F.R. § 401.40 when it allegedly refused to allow him to inspect his records in person at its headquarters and a field office in Baltimore. Campeau seeks damages for this alleged refusal but, once again, he has not alleged the requisite "adverse effect." 5 U.S.C. § 552a(g)(1)(D). Campeau argues that lack of access to his records itself constitutes an adverse effect, but that reasoning reads the independent "adverse effect" requirement out of the statute. Moreover, the Privacy Act does not authorize damages for denial-of-access claims in the first place and provides instead only for injunctive relief. See, e.g., Rouse v. U.S. Dep't of State, 567 F.3d 408, 414 n.4 (9th Cir. 2009).

Campeau has not requested an injunction requiring the SSA to permit him to inspect his records at its offices as he allegedly attempted to do. (ECF No. 1 at 6-7.) He did request an injunction requiring the SSA to produce his records "in open court" in order to "make it known" whether they include his "indenture" and to provide him with certified copies. (Id. at 6 ¶¶ VI.3-4.) The District Court concluded that Campeau failed to exhaust this claim as well. Once again, however, we conclude instead that Campeau failed to allege any entitlement to statutory relief, and we thus need not resolve the

dispute over whether the SSA ever received Campeau's request for amendment.

7

exhaustion-related issues noted in the margin.[4]

The Privacy Act permits injunctive relief when an agency "refuses to comply with an individual request [to review the record and obtain copies] under subsection (d)(1) of this section." 5 U.S.C. § 552a(g)(1)(B) (emphasis added). Campeau has not alleged that the SSA "refused to comply" with any "individual request" other than that it allow him to inspect his records at the SSA's offices. His brief on appeal too argues only that the Privacy Act permits "direct access to the records at their source." (Appellant's Br. at 5.) But Campeau did not request an injunction requiring the SSA to provide him with such access, and he has not stated any statutory basis for an injunction requiring the SSA to produce his records to him in any other way.

For these reasons, we will affirm the judgment of the District Court.

---

[4] The SSA submitted a declaration by Stephen Patrick, which in turn attached (1) a September 16, 2011 e-mail from Campeau to an SSA office requesting assistance in obtaining in-person access to his file, and (2) a September 30, 2011 e-mail from the SSA to Campeau in response notifying him of the proper procedures for obtaining copies of his records, including payment of the applicable fees. (ECF No. 5-2.) Patrick's declaration also states that the SSA has no record of any further communications from Campeau. In his briefs below, Campeau asserted that he might not have received the SSA's e-mail but that, even if he did, the e-mail does not address his request for an in-person inspection. He did not claim to have followed the procedures outlined in that e-mail or to have paid the applicable fees. We need not address this issue, however, or the parties' other exhaustion-related disputes regarding whether Campeau visited the Reistertown Road field office or whether his alleged request to review his records there complied with 5 U.S.C. § 552a(d)(1) and 20 C.F.R. § 401.40.