Jerard M. BRUNE, Appellant

v.

INTERNAL REVENUE SERVICE, et al.

No. 88–5025.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 7, 1988.

Decided Dec. 2, 1988.

Cary P. Sklar, with whom Gregory O'Duden, Washington, D.C., was on the brief for appellant. Lois G. Williams, Washington, D.C., also entered an appearance for appellant.

Murray S. Horwitz, Attorney, Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen and Jonathan S. Cohen, Attorneys, Dept. of Justice, Washington, D.C., were on the brief for appellees.

Before EDWARDS, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Section (e)(2) of the Privacy Act provides: "Each agency that maintains a system of records shall ... (2) collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs...." 5 U.S.C. § 552a(e)(2).

Appellant, Jerard M. Brune, sued his employer, the Internal Revenue Service, for damages on the ground that the agency violated this provision when it contacted third parties in the course of investigating whether Brune had made false statements on his travel expense vouchers. The district court granted summary judgment to the government. Previously, the court also denied appellant's motion to compel discovery of documents relating to the IRS's conduct of investigations of other employees on similar charges, and awarded attorney's fees to the government for the necessity of opposing the motion. We affirm in all respects.

## I. BACKGROUND

In 1983, appellant Brune was an IRS Revenue Agent. His Group Manager, Roland Buehrer, undertook a routine review of his time sheets and case files. Buehrer became suspicious about appellant's time entires, which reported what seemed like inordinately numerous and lengthy visits to two taxpayers and their accountants; he contacted the taxpayers in question and they reported that appellant's visits had in fact been fewer and shorter than he had indicated on his time sheets. Based on this inquiry, Buehrer advised the IRS Regional Inspector of his suspicions that Brune had falsified the travel vouchers he submitted in connection with these visits.

Special Agent Daniel Day, a criminal investigator in the Internal Security Division of the IRS Regional Inspector's office, reviewed Buehrer's report and initiated a criminal investigation under 18 U.S.C. § 1001, which makes it a felony to make false or fraudulent statements to a govern-

ment agency. Special Agent Day first interviewed Buehrer and then, having determined that interviews with the taxpayers and their accountants were necessary in order to verify or refute the allegations against appellant, contacted those third parties. When they corroborated Buehrer's suspicion of Brune, Special Agent Day referred the matter to the United States Attorney.

The prosecutor declined to bring a criminal case because too small an apparent overcharge (less than $20) was involved, so the IRS treated the matter as an administrative misconduct case under internal regulations governing false statements. *See* IRS Handbook of Employee Responsibilities and Conduct at 0735.1–18 § 225.5 (1980). In May 1983, IRS officials interviewed appellant, who stated that he could not recall the details of the visits in question. A month earlier, however, in a performance review, he had explained his time entries by reference to his understanding that it was office policy not to record "split days," *i.e.*, not to claim time for more than one case per day. Brune had then said that, pursuant to such policy, he charged the full work day to the case on which he had spent the most time each day, and that his travel vouchers reflected this practice. The IRS determined that, in fact, there never was any policy against recording "split days." The administrative investigation resulted in the IRS giving Brune an "oral admonishment" in October 1983.

In January 1986, Brune filed a complaint in the district court alleging that the IRS investigation violated section (e)(2) of the Privacy Act because the agency had contacted third parties before seeking information directly from him. Specifically, appellant argued that section (e)(2) means that a government investigator, in order to determine whether to contact a suspect before talking to third parties, must make "a 'practicability' assessment . . . on a case-by-case basis, and must weigh [the suspect] individual's privacy interests as well as any possible impediments to the government's ability to carry out its investigation as expeditiously as it would like." Appellant alleged that Special Agent Day's contacts

with the taxpayers' accountants had injured his professional reputation.

Each side moved for summary judgment, which the district court granted in favor of the government. The court held that section (e)(2) "prescribes no order in which an agency must consult the various sources of information it collects about an individual, nor does it prohibit an agency from consulting other sources until it has exhausted the subject individual's recollection." The district court added that it is "generally impracticable to conduct an investigation into possible wrongdoing—even petty wrongdoing—by relying upon the suspect himself as either the initial or primary source," since "[s]uspects cannot be assumed to be altogether reliable sources of derogatory information about themselves, and once alerted to the fact that there are suspicions, have both incentive and opportunity to assure that subsequent sources likely to be consulted are as exculpatory as possible."

## II. Merits

■ Appellant maintains that section (e)(2) of the Act requires the government, in light of the circumstances of each case, to weigh the suspect's privacy interests against concerns of practicability—limited, at places in appellant's brief, to the government's interest in expedition—in order to determine the sequence in which the investigation shall proceed. In response, the government places special emphasis on the criminal character of its initial investigation of appellant, citing guidelines issued by the Office of Management and Budget shortly after passage of the Privacy Act, in which "investigations of possible criminal misconduct" are given as an example of situations where "the kind of information needed can only be obtained from a third party." 40 Fed.Reg. 28,960 at 28,961 (1975).

We conclude, however, that the government's distinction between civil and criminal investigations is not tenable, as a matter either of logic or, in light of the legislative history of section (e)(2), of law. First,

an individual's privacy interest in suppressing widespread knowledge of an investigation is not primarily a function of whether civil or criminal charges are being pursued at the moment. Civil investigations may evolve into criminal investigations, and vice versa, in mid-course. *See, e.g., United States v. John Doe, Inc. I*, 481 U.S. 102, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987). Civil charges involving moral turpitude and potentially significant sanctions may implicate much weightier privacy interests than an investigation looking toward criminal prosecution for a misdemeanor or a regulatory offense involving only a technical *mens rea*.

Second, the Senate Committee on Government Operations amended the bill that became the Privacy Act by appending to section (e)(2) the final limiting phrase ("about an individual's rights, benefits, and privileges under Federal programs") specifically "[i]n order to meet agency objections about the needs of certain *civil and criminal* law enforcement programs requiring ... investigative information to be collected from other sources...." S.Rep.No. 1183, 93rd Cong. 47 (1974) (emphasis added), U.S.Code Cong. & Admin.News 1974, pp. 6916, 6962. Such objections could, and presumably would, have been disregarded if section (e)(2) were not applicable to both civil and criminal law enforcement efforts in the first place. That the alleged violation occurred in the course of a criminal investigation, therefore, cannot be dispositive of plaintiff's claim, else the effect would be to exempt criminal proceedings entirely from the reach of the section.

█ No further interpretation of section (e)(2) is necessary to resolve the present case, however; for even under appellant's suggested approach, it was self-evidently impracticable for the government first to contact the suspect IRS agent in an investigation into possibly false statements he made in the course of his official activities. The investigator, viewing the case *ex ante*, could reasonably infer that there was nothing to gain (by way of protecting the suspect's privacy) and much to lose (in terms of ascertaining the truth) by contacting the suspect before contacting the third party.

First, as to the potential gain, investigations of false statement charges, by their nature, involve a suspect who has already given the government his version of the facts. The probability that, when confronted, he will advance an explanation of his own suspect statement sufficient to obviate the need to contact third parties is minimal; when the statement in question is facially unambiguous, as in this case, the probability is vanishingly small.

Second, as to the potential loss, the affidavit of Special Agent Day adequately identifies the risks involved. As he explained:

> Generally, for a number of reasons subjects of a criminal investigation are not contacted first in the course of an investigation. One of the reasons for this investigative procedure is to test the validity and veracity of the subject's responses when the subject is interviewed and to compare information previously obtained from the third party sources. Similarly another reason ... is to ascertain initially from third party sources whether there is any substance or credibility to the allegations. A further reason ... is the possibility that the subject could impede or compromise the investigation after becoming aware of the investigation. For example, the subject could attempt to dissuade potential witnesses from cooperating with the investigation. The subject could intimidate third parties and could encourage collusion by having them falsify records or conjure a false explanation of records or events.

The concerns raised by Day's affidavit are most obviously well-founded in a case such as this where the investigation involves allegations of misconduct by an IRS agent in the course of his dealings with taxpayers. An IRS agent unavoidably wields considerable power over the taxpayers and tax advisors with whom he comes in contact. His ability to coerce them, and their incentive to avoid alienating him, substantially heighten the risk of biasing the

only witnesses who may be able to provide first-hand information to the investigator. In the type of case before us, we can hardly find fault in Special Agent Day's conclusion that such practical concerns outweighed the appellant's privacy interest.

Appellant maintains that section (e)(2) requires the investigating authority to undertake a "conscientious weighing" of the suspect's privacy interest against the government's interest in efficiency. It is not entirely clear from Special Agent's Day's affidavit whether he consciously balanced these considerations before interviewing third parties. This ambiguity need not be resolved, however, because the subjective thought processes of the investigator are irrelevant to the government's legal obligation under section (e)(2); the "practicability" standard of that provision requires the government to act in a particular way, not to engage in a particular thought process.

Appellant argues, alternatively, that the IRS investigation was not conducted reasonably, *i.e.*, could have proceeded practicably without jeopardizing his reputation. He focuses on the wrong question, however, when he maintains, *ex post*, that a simple meeting with investigators at the outset would have laid to rest any suspicion of criminality involving his travel vouchers. Under appellant's own standard, the relevant inquiry under section (e)(2) concerns, as it must, the reasonableness of the investigator's decision to contact a third party viewed at the time it was made, with all the uncertainties attendant upon an investigation at its initial stages.

Appellant relies heavily upon the unpublished opinion in *Johnson v. Internal Revenue Service*, No. SA-77-CA-5 (W.D.Tex. Jan. 15, 1979), a section (e)(2) suit arising from an IRS administrative investigation into a potential conflict of interest between the plaintiff agent's official functions and his private investments. In the *Johnson* court's view, "the opportunity to secrete evidence" does not justify an investigator's contacting third parties before confronting the suspect. At least in the context of an IRS agent under investigation, we simply disagree on this point; considerations pertaining to the compromise of further evidentiary sources are precisely the type of matters suggested by the word "practicable" in section (e)(2). The *Johnson* court's approach is especially inapt where, as here, an investigator reasonably concludes from the nature of the case that contacting the suspect first would not, in all likelihood, make it unnecessary thereafter to contact third parties but would entail some risk of compromising such further inquiry.

In sum, we hold that the nature of the investigation challenged here under the Privacy Act, involving possible false statements by an IRS agent, made it impracticable for the investigating authority to collect the information it needed directly from the subject individual. Accordingly, we affirm the grant of summary judgment to the government on appellant's section (e)(2) claim.

### III. DISCOVERY AND ATTORNEY'S FEE AWARD

■ Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery on matters "relevant to the subject matter involved in the pending suit." The district court has "broad discretion" in its handling of discovery, and its decision to allow or deny discovery is reviewable only for abuse of discretion. *In re Multi-Piece Rim Products Liability Litigation*, 653 F.2d 671, 679 (D.C.Cir. 1981).

■ In the district court, appellant demanded that the IRS produce, *inter alia:*

4. All documents concerning, addressing, or relating to the discipline of IRS employees in the Midwest Region between January 1, 1980 and January 1, 1985, for violation of IRM 0735.1, Section 225.5.

5. All documents concerning, addressing, or relating to investigations involving or touching upon possible violations of IRM 0735.1, Section 225.5 conducted by the Inspection Service between January 1, 1980 and January 1, 1985.

When the IRS objected to these requests, appellant filed a motion to compel dis-

covery, in which he justified the two requests as part of an effort to determine the propriety of the IRS's initial decision to pursue his case through a criminal, rather than an administrative, investigation.

The district court denied the motion, stating that the requested documents were irrelevant to appellant's claim. Invoking Rules 11 and 26(g) of the Federal Rules of Civil Procedure, respectively, the court concluded that appellant's request "was unreasonable and unduly burdensome given the needs of the case," and "was interposed for some improper purpose such as to harass or cause needless expense." The court, *sua sponte*, awarded the government $300 in attorney's fees for the necessity of opposing appellant's motion.

Nothing in appellant's Privacy Act claim turns on the type of investigation that the IRS conducted or on its motives for choosing a particular mode of proceeding, as opposed to the sequence in which it pursued the investigation. Assuming that, if appellant were to prove that the IRS chose for some improper purpose to open a criminal rather than an administrative investigation of his conduct, he would have a cause of action, it would not arise from section (e)(2) of the Privacy Act—the sole basis for recovery alleged in his complaint. Nor under appellant's case-by-case balancing approach to section (e)(2) does anything turn on subjective factors of motivation, as opposed to the objective difficulties, viewed *ex ante*, that could be anticipated if the suspect were contacted first.

Appellant therefore misses the mark when he invokes cases in which the allegedly pretextual nature of the defendant's conduct was relevant to the claim in suit. In *Hill v. United States*, 418 F.2d 449, 452 (D.C.Cir.1968), for example, the appellant sought to suppress evidence that the police had seized incident to an arrest for a minor traffic violation by demonstrating that the arrest itself was pretextual. In that case, the motives of the police bore upon the legality of the arrest, which in turn, could affect the admissibility of the evidence seized.

On appeal, appellant makes the distinct argument that the requested documents might show whether the agency would have found it practicable to speak with him before turning to third parties. This argument, however, did not appear in appellant's memorandum in support of the motion to compel discovery, nor is it fairly inferable from the contentions that do appear therein. Indeed, the memorandum makes no reference to the concept of practicability. The district court did not abuse its discretion by ruling on the relevancy argument presented to it, without speculating about other, potentially relevant purposes for the requested documents.

Since appellant's sole objection to the award of attorney's fees rests on his unsuccessful challenge to the district court's relevancy determination, we affirm the fee award as well.

## IV. CONCLUSION

Since we find no ground upon which to disturb the grant of summary judgment or the award of attorney's fees for the necessity of opposing appellant's motion to compel discovery, the orders of the district court are

AFFIRMED.