310 F.3d 108
 Raymond CARTON, Plaintiff-Appellant,
v.
Janet RENO, Attorney General, United States Department of Justice, Doris Meissner, Director, Immigration and Naturalization Service, Steven J. Farquharson, District Director, Immigration and Naturalization Service, Irena Kipa-Daigle, Deputy District Director, Immigration and Naturalization Service, Kevin Morrissey, Section Chief, Investigations, Immigration and Naturalization Service, John P. Weiss, Officer in Charge, Immigration and Naturalization Service, Defendants,
Immigration and Naturalization Service, Defendant-Appellee.
 Docket No. 01-6010.
 United States Court of Appeals, Second Circuit.
 Argued June 26, 2002.
 Decided October 31, 2002.
 
 Alexander Scheirer, Scheirer & Geller, LLC, Hamden, CT, for Plaintiff-Appellant.
 William A. Collier, Assistant United States Attorney, Hartford, CT (for John A. Danaher III, United States Attorney for the District of Connecticut), for Defendant-Appellee.
 Before: JACOBS, LEVAL, and KATZMANN, Circuit Judges.
 Judge KATZMANN concurs in the opinion of the Court and files a separate concurrence as well.
 JACOBS, Circuit Judge.
 
 
 1
 The United States Immigration and Naturalization Service (the "INS") conducted an inquiry into complaints that plaintiff Raymond Carton, an INS investigator, had used abusive tactics. Carton sued, alleging that the INS and individual defendants violated the Privacy Act of 1974, 5 U.S.C. § 552a et seq. (the "Privacy Act"), by interviewing the third-party complainants without notifying and interviewing him first.
 
 
 2
 The provision at issue states that an agency that maintains a system of records must "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs." 5 U.S.C. § 552a(e)(2).
 
 
 3
 The district court expressed skepticism about whether Carton's federal employment qualified as a "Federal program" within the meaning of Section 552a(e)(2), but granted summary judgment on the ground that, even if the Act applies, the undisputed circumstances reveal that defendants did not violate the Act because it would have been impracticable to contact Carton before interviewing the complainants.
 
 
 4
 We affirm for substantially the reasons stated by the district court.
 
 
 5
 * During Carton's service as an INS investigator in 1995-96, he conducted unannounced on-site inspections at the Saybrook Point Inn (the "Inn") in Old Saybrook, Connecticut. On March 21, 1996, Carton served the Inn with a notice of intent to impose a $22,120 fine.
 
 
 6
 The Inn filed a misconduct complaint with the INS that provided a detailed chronology of Carton's alleged misconduct and characterized his tactics as "terrorization," "intimidation," "capriciousness," and "misrepresentation." The complaint triggered an internal INS investigation by Agent Kevin Morrissey in May 1996. Morrissey interviewed several employees of the Inn without contacting Carton. The INS gave Carton no notice that he was under investigation.
 
 
 7
 Morrissey submitted his report of the investigation to the Deputy District Director on August 15, 1996. The report recounted complaints by several Inn employees that Carton had been abrupt, rude, unprofessional, and threatening. Morrissey made no recommendations, but the Deputy District Director gave Carton a notice of proposal to suspend him for two days without pay for "Disrespectful Conduct to a Member of the Public." The notice described the charged conduct, informed Carton that he had ten days in which to respond before any action would be taken, and informed him that he had the right to be represented.
 
 
 8
 Carton responded through counsel. On November 29, 1996, the INS advised Carton that the reviewing officer had considered all of the evidence, including Carton's response, that Carton would be suspended on December 2 and 3, and that he could contest the decision either by filing a grievance with his union or, if he believed the discipline was discriminatory, by pursuing equal employment remedies.
 
 
 9
 Carton contested the action through his union, and the parties agreed in settlement that (1) the suspension would be rescinded and Carton would receive two days of back pay; (2) a reprimand would remain in Carton's file through April 30, 1998; and (3) the arrangement "satisf[ied] any grievance that [Carton] has against the [INS] concerning this disciplinary action." On appeal, the INS suggests obliquely that Carton's lawsuit is barred by the settlement release, but it does not pursue the argument.
 
 II
 
 10
 The complaint alleges that conducting the internal investigation without Carton's participation violated the Privacy Act requirement that the agency "collect information to the greatest extent practicable directly from the subject individual." 5 U.S.C. § 552a(e)(2). Carton alleges that, as a result of the violation, he was denied consideration for a promotion, and that he suffers continuing harm because the investigation report remains in his personnel file.
 
 
 11
 In December 1998, the district court issued an order dismissing Carton's complaint as against the individual defendants, because they were not proper defendants to a claim under the Privacy Act. Carton does not appeal that ruling.
 
 
 12
 Two years later, the district court granted summary judgment in favor of the INS. The court noted preliminarily that, notwithstanding rulings in at least two circuit courts, Section 552a(e)(2) seems inapplicable on its face to an internal investigation arising out of the "federal agency employer-employee" relationship:
 
 
 13
 The statute on its face does not appear to cover plaintiff's situation, i.e., an investigation by a federal agency employer, instigated by a third party complaint, that uncovered information that resulted in an adverse job action. While a job action could constitute an adverse determination about one's "rights, benefits and privileges," it strains credulity to construe the adverse determination as being "under [a] Federal program[]." Although "Federal program" is not defined under the Privacy Act, "Federal benefit program" is — and it would not be a leap of logic to surmise that the terms are interchangeable. The INS would not seem to qualify as a "program administered or funded by the Federal Government ... providing cash or in-kind assistance in the form of payments, grants, loans, or loan guarantees to individuals."
 
 
 14
 Carton v. United States Dep't of Justice, No. 98cv1282, slip op. at 3 (D.Conn. Dec. 7, 2000) (quoting 5 U.S.C. § 552a(a)(12)).
 
 
 15
 The court granted summary judgment on the ground that, even when courts have applied the Act to an agency's investigation of its employee, they "have refused to find liability ... where an agency's investigation into alleged employee misconduct made it `impracticable' to collect the information directly from the employee involved." Id. The district court held:
 
 
 16
 [I]t would have been "impracticable" for the agency to contact plaintiff prior to conducting its investigation given plaintiff's inherent ability to intimidate the witnesses.... Further, the information pertaining to the third party complaint was something only that source would know about. Inquiry of plaintiff would be fruitless as the claims of the third party and any support thereof could only be developed by investigation of the third party.
 
 
 17
 Id. at 4-5. Judgment dismissing the complaint was entered on December 19, 2000. Carton appeals.
 
 III
 
 18
 This Court reviews the district court's grant of summary judgment de novo. See Young v. County of Fulton, 160 F.3d 899, 902 (2d Cir.1998). In doing so, this Court is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir.1998). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 19
 The Privacy Act "regulates the collection, maintenance, use, and dissemination of information concerning individuals." Cardamone v. Cohen, 241 F.3d 520, 524 (6th Cir.2001) (quoting Hudson v. Reno, 130 F.3d 1193, 1204 (6th Cir.1997)). It "attempts to strike a balance between the government's need to collect and maintain information and the privacy interests of the persons to whom such information pertains." Id. The provision at issue is Section 552a(e)(2), which provides:
 
 
 20
 Each agency that maintains a system of records shall ... collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs.
 
 
 21
 5 U.S.C. § 552a(e)(2). Carton argues that the INS did not collect all information from him "to the greatest extent practicable" because it interviewed the third-party complainants without talking to him or informing him that an investigation was ongoing. We affirm for substantially the reasons stated by the district court.
 
 
 22
 The threshold issue identified by the district court — whether Section 552a(e)(2) applies at all to the federal employment relationship — appears to be an open question in this Circuit. Other circuits have applied this section in the context of federal employment disputes similar to the one presented here, but the question of facial applicability apparently never arose in those cases. See, e.g., Cardamone, 241 F.3d at 524 (evaluating Defense Department's investigation of its employee's management of a military base school system); Waters v. Thornburgh, 888 F.2d 870, 873 (D.C.Cir.1989) (evaluating Justice Department's investigation of the propriety of its employee's leave days). We conclude, as did the district court, that it is unnecessary to decide whether Section 552a(e)(2) applies to government employment because, even if it does, the undisputed facts in the present case would not amount to a violation.
 
 
 23
 "[T]he specific nature of each case shapes the practical considerations at stake that determine whether an agency has fulfilled its obligation ... to elicit information directly from the subject of the investigation to the greatest extent practicable." Cardamone, 241 F.3d at 528. The Office of Management and Budget ("OMB") Guidelines promulgated with the Privacy Act provide that, "when conducting an investigation into a particular person, third party sources may be contacted first when practical considerations, such as confirming or denying false statements, require this or when the information can only be obtained from third parties." Hudson v. Reno, 130 F.3d 1193, 1205 (6th Cir.1997) (citing OMB Privacy Act Guidelines, 40 Fed.Reg. 28,948, 28,961 (1975)), abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001).
 
 
 24
 For several reasons, the undisputed facts presented on this appeal do not amount to a Privacy Act violation (even assuming that the provision at issue regulates the employment of federal employees). First, the INS elicited Carton's account of the disputed events before imposing discipline. There is no reason to think that information of greater extent could have been collected from Carton if he had been interviewed first rather than last. To the contrary, it may be expected that the interviews with the complainants and others would sharpen the issues and focus the charges in a way that would allow Carton to respond more particularly, and that this sequence would serve his interests as well as the interests of a fair investigation. See Gergick v. Austin, No. 89-0838-CV-W-2, 1992 WL 511848, at *19 (W.D.Mo. Aug. 24, 1992) ("The right of the employee to present his own case in writing and to refute the conclusions or information provided by others is adequate to meet the requirements of 5 U.S.C. § 552a(e)(2)."), aff'd, 997 F.2d 1237 (8th Cir.1993).
 
 
 25
 Second, the complaint against Carton was incapable of being resolved by his say-so or by some documentation he might be expected to have. In Waters, a Justice Department supervisor investigating the propriety of leave days attributed by the employee to the bar exam and jury duty contacted the Pennsylvania Board of Law Examiners and the jury commissioner without contacting the employee. 888 F.2d at 871-72. The District of Columbia Circuit concluded as a matter of law that the government had not sought information from Waters to the greatest extent practicable because the supervisor sought only "objective, unalterable information" that he could have obtained from the employee himself, such as by asking to see his bar exam ticket. Id. at 873, 877.
 
 
 26
 The allegations against Carton, however, could not be dispelled categorically by anything Carton could say or adduce. His denial would not obviate the need to investigate allegations that he had engaged in high-handed and capricious abuse of powers entrusted to him by his employer. The analog in the caselaw is Cardamone, in which the school administrator of a military base alleged that Defense Department investigators violated the Privacy Act by interviewing sixty-one witnesses before interviewing him about alleged school mismanagement. 241 F.3d at 521-23. The Sixth Circuit held there was no violation because the investigators were looking into "multiple allegations, some of which could possibly be resolved by requesting objective information from Cardamone," but some of which made it "impracticable to think that charges of employee mistreatment and harassment could be resolved by interviewing Cardamone before others." Id. at 528. Relying on a not-always useful distinction between objective and subjective facts, the Sixth Circuit concluded that the Act "does not require an agency to conduct its investigation piecemeal, or to interview witnesses in any particular order, when there are both subjective and objective complaints to be investigated." Id. at 529.
 
 
 27
 Finally, Carton's position gave him the power and opportunity to coerce witnesses or otherwise impede the investigation. In Brune v. Internal Revenue Service, 861 F.2d 1284 (D.C.Cir.1988), the IRS investigated its agent's alleged falsification of time records by contacting the taxpayers he claimed to have visited during the times in question, without first contacting him. Id. at 1286. The District of Columbia Circuit held that a preliminary interview with the agent was not "practicable" within the meaning of Section 552a(e)(2) because an IRS agent has the power to coerce witnesses:
 
 
 28
 [I]t was self-evidently impracticable for the government first to contact the suspect IRS agent in an investigation into possibly false statements he made in the course of his official activities.... An IRS agent unavoidably wields considerable power over the taxpayers and tax advisors with whom he comes in contact. His ability to coerce them, and their incentive to avoid alienating him, substantially heighten the risk of biasing the only witnesses who may be able to provide first-hand information to the investigator.
 
 
 29
 Id. at 1287-88.
 
 
 30
 Carton's authority as an INS agent alone justifies a preference to interview him last on the ground that interviewing him earlier would be impracticable both as a matter of investigative technique and in light of the public interest in a fair and complete investigation. Moreover, there were specific allegations that Carton had already terrorized and intimidated the complainants. See Hudson, 130 F.3d at 1205 (holding that, because the employee "was suspected of making false statements and she was allegedly intimidating and threatening people and otherwise dividing the U.S. Attorney's office," the investigator "did not violate the Privacy Act when he interviewed others before interviewing Hudson"). It is immaterial whether Carton would in fact have impeded the investigation by intimidating the complaining witnesses. "[T]he relevant inquiry under section (e)(2) concerns ... the reasonableness of the investigator's decision to contact a third party viewed at the time it was made." Waters, 888 F.2d at 874 (emphasis added) (quoting Brune, 861 F.2d at 1288).
 
 
 31
 On these facts, Carton cannot show that the INS failed to collect information directly from him to the greatest extent practicable. Absent that showing, Carton could not establish a violation of Section 552a(e)(2) of the Privacy Act.
 
 
 32
 * * * * * *
 
 
 33
 The judgment of the district court is affirmed.
 
 
 34
 KATZMANN, Circuit Judge, concurring.
 
 
 35
 I join the judgment of the court affirming the district court's grant of summary judgment to the government, but would hold that the Privacy Act does apply to this case.
 
 
 36
 The district court questioned whether the Privacy Act is applicable here because in its view it strains credulity to construe an adverse employment determination of the federal government as being "under [a] Federal program." Although the term "federal program" is not defined in the Act, the district court suggests that what Congress really meant to write in Section 552a(e)(2) was "federal benefit program," which is defined in the Act as a "program administered or funded by the Federal Government ... providing cash or in-kind assistance in the form of payments, grants, loans, or loan guarantees to individuals." 5 U.S.C. § 552a(a)(12) (2000). However, there is no evidence that this is what Congress actually envisioned. As the statute is not clear on its face as to whether "federal program" is interchangeable with "federal benefit program," we may look to reliable legislative history.
 
 
 37
 In fact, the legislative history of the Privacy Act, and specifically of section (e)(2), indicates that "federal program" is not synonymous with "federal benefit program." In its discussion of the provision that became section (e)(2), the Senate Committee on Government Operations explained that:
 
 
 38
 This section, as originally introduced, had no qualifications, but reflected the basic principle of fairness recommended by several reports, that where government investigates a person, it should not depend on hearsay or `hide under the eaves', but inquire directly of the individual about matters personal to him or her.
 
 
 39
 In order to meet agency objections about the needs of certain civil and criminal law enforcement programs requiring intelligence and investigative information to be collected from other sources, the section was limited to instances where the information sought could affect a person's qualifications to be considered by government for employment or other rights, benefits and privileges.
 
 
 40
 S.REP. No. 93-1183, at 47 (1974), reprinted in 1974 U.S.C.C.A.N. 6916, 6962 (emphasis added). This language indicates that Congress specifically contemplated that the Privacy Act would apply to situations involving employment with the government. This amendment was one of several amendments that "were informally negotiated by the staffs of the House and Senate Committees and are based on agreements between the principal sponsors of the privacy bill in the two bodies." 120 CONG. REC. 40,880 (1974) (statement of Rep. Moorhead, explaining that it was not possible to hold a conference committee on the House and Senate bills due to "the lateness in the session" and "the pressures on Members of both bodies due to other pressing legislative business").
 
 
 41
 Having concluded that this case does fall within the scope of the Privacy Act, I would then have considered whether the INS violated Carton's privacy rights under § 552a(e)(2) when the agency interviewed five employees of the Saybrook Point Inn before seeking information directly from Carton. Subsection (e)(2) makes clear that an agency should "to the greatest extent practicable" collect information directly from the subject individual. Although the provision does not state that the agency must go to the subject individual "first," before speaking with third parties, I think it is important to underscore that the language of the provision and the legislative history reflect Congress's primary desire to protect the subject individual from hearsay. See S.REP. No. 93-1183, at 47 (1974), reprinted in 1974 U.S.C.C.A.N. 6916, 6962.
 
 
 42
 Moreover, as Senator Ervin, Chairman of the Committee on Government Operations, explained in the "Analysis of House and Senate Compromise Amendments to the Federal Privacy Act": "[Section 552a(e)(2)] is designed to discourage the collection of personal information from third party sources and therefore to encourage the accuracy of Federal data gathering. It supports the principle that an individual should to the greatest extent possible be in control of information about him which is given to the government.... [I]t is a principle designed to insure fairness in information collection which should be instituted wherever possible." 120 CONG. REC. 40,405, 40,407 (1974).
 
 
 43
 Although section (e)(2) disfavors the collection of information from third parties, it recognizes that in some situations it will not be practicable to collect information only from the subject individual. For the reasons ably stated in the majority opinion, I think this is one of those cases. Thus, I conclude that the government did not violate the Privacy Act as a matter of law under the facts of this case. In so doing, I vote to affirm the district court's holding that the INS was justified as a matter of law under these circumstances in interviewing the employees of the Saybrook Point Inn before seeking information from the plaintiff.