**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1143**

HAROLD HOGAN, JR.,

Plaintiff - Appellant,

versus

GORDON R. ENGLAND, Secretary, Department of
the Navy,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Leonie M. Brinkema, District
Judge. (CA-04-756)

Argued:  December 1, 2005          Decided:  December 28, 2005

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Christopher Donald Borwhat, LAW OFFICES OF OWAIIAN M.
JONES, Fredericksburg, Virginia, for Appellant.   Jackson Lee
McGrady, U. S. MARINE CORPS, Quantico, Virginia, for Appellee. **ON
BRIEF:** Owaiian Jones, Chad M. Rinard, LAW OFFICES OF OWAIIAN M.
JONES, Fredericksburg, Virginia, for Appellant.  Paul J. McNulty,
United States Attorney, Leslie B. McClendon, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

See Local Rule 36(c).

PER CURIAM:

Harold Hogan argues that the Navy violated the Privacy Act because it failed to collect information from Hogan himself to the "greatest extent practicable," 5 U.S.C.A. § 552a(e)(2) (West 1996), when it investigated allegations that he was intoxicated at work and engaged in inappropriate behavior toward co-workers. The district court granted summary judgment to the Secretary of the Navy. We affirm.

I.

In August 2003 Hogan worked as an electrician at the United States Marine Corps Base in Quantico, Virginia. Hogan's supervisors, Dale Triplett and Robert Welborn, and one of his co-workers, Kimberly Sinclair, accused Hogan of smelling like alcohol at work on August 13 and 14. Sinclair also complained that Hogan behaved inappropriately by asking her if she would come home with him on August 13. Welborne further alleged that Hogan attempted to engage him in an argument on August 14. Triplett granted Hogan sick leave on each of those dates.

Daniel Rudd, a supervisor at Quantico, conducted an investigation into the allegations and presented the resulting evidence to William Fennell, the Base's Facilities Manager. Fennell proposed that Hogan be suspended for fourteen days. Hogan responded by claiming that the investigation "violated [his] civil

2

rights . . . with reckless disregard for the provisions of the law." After meeting with Hogan and his union representative, the Deputy Chief of Staff at Quantico, J.D. Provenzano III, suspended Hogan for fourteen days. Hogan filed two unsuccessful union grievances.

On September 14, 2004, Hogan filed an amended complaint in the Eastern District of Virginia against Gordon England, Secretary of the Navy ("the Secretary"). Hogan alleged that the Navy violated the Privacy Act "by interviewing third parties . . . for information that was available by directly interviewing Hogan," and requested damages of $50,000, attorney's fees, and costs.

After discovery, the Secretary moved for summary judgment. Hogan's lawyer noted at the hearing on that motion that Hogan's complaint centered on the investigation into the intoxication charge, not the allegations concerning inappropriate behavior towards Ms. Sinclair or Mr. Welborn. Finding no violation of the Privacy Act, the district court granted that motion in an oral ruling.

## II.

The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an

3

individual's rights, benefits, and privileges under Federal programs." 5 U.S.C.A. § 552a(e)(2) (West 1996) (emphasis added). "[T]he specific nature of each case shapes the practical considerations at stake that determine whether an agency has fulfilled its obligations under the Privacy Act to elicit information directly from the subject of the investigation to the greatest extent practicable." Cardamone v. Cohen, 241 F.3d 520, 528 (6th Cir. 2001).

The Act "attempts to strike a balance between the government's need to collect and maintain information and the privacy interests of the persons to whom such information pertains." Hudson v. Reno, 130 F.3d 1193, 1204 (6th Cir. 1997), partially overruled on other grounds, Doe v. Chao, 540 U.S. 614 (2004). It does not require that an agency seek information only from a person it investigates, however; the Act allows agencies to question third parties where it would be impractical not to do so. The Office of Management and Budget, which promulgated guidelines for implementing the Privacy Act, identified several occasions in which it would be appropriate -- if not necessary -- to question a third party. See OMB Privacy Act Guidelines, 40 Fed. Reg. 28,948, 28,961 (July 9, 1975).[*] For example, the OMB suggested that an agency could consult third parties when "the kind of information needed can only be obtained

---

[*]These guidelines were codified at 5 C.F.R. § 293.104 (2004) using language similar to the original OMB report.

4

from a third party such as investigations of possible criminal misconduct" or when there was a "need to insure the accuracy of information supplied by an individual by verifying it with a third party." Id.; see also Hudson, 130 F.3d at 1205 (quoting OMB guidelines).

Interpreting the Act in light of these guidelines, courts of appeals have uniformly held that § 552a(e)(2) does not prevent agencies from interviewing third parties when investigating subjective allegations of misconduct. Courts recognize that "[t]he probability that, when confronted, [the accused] will advance an explanation . . . sufficient to obviate the need to contact third parties is minimal." Brune v. IRS, 861 F.2d 1284, 1287 (D.C. Cir. 1988). This is so because most subjective accusations are "incapable of being resolved by [the individual's] say-so"; hence, an accused's "denial would not obviate the need to investigate allegations." Carton v. Reno, 310 F.3d 108, 112 (2d Cir. 2002). Cf. Cardamone, 241 F.3d at 528 (noting it was "impracticable to think that charges of employee mistreatment and harassment could be resolved by interviewing Cardamone before others.").

Nevertheless, Hogan argues that this is not simply a case about subjective allegations. He maintains that he possessed objective proof of his sobriety -- namely, a "Daily Dispatching Record" indicating that he was assigned a vehicle on each day that he was alleged to be intoxicated. See Brief of Appellant at 14-15.

He notes, correctly, that courts have found violations of the Privacy Act when an agency speaks to a third party even though the individual under investigation possesses objective proof that would eliminate the need for any further questioning. See, e.g., Waters v. Thornburgh, 888 F.2d 870, 873 (D.C. Cir. 1989) (holding that Department of Justice violated the Privacy Act by asking state bar association to confirm that a DOJ employee took the exam when it could have asked the employee for his admission ticket), partially overruled on other grounds, Doe v. Chao, 540 U.S. 614 (2004).

Hogan's argument misunderstands the evidentiary value of the Dispatching Record, however. That document is not proof that obviates the need for further investigation. To the contrary, it only heightens the need to question Hogan's supervisor, Triplett, to find out if he was the one who signed out the vehicle to Hogan as Hogan contends, and, if so, how he could have done so given his allegation that Hogan had the smell of alcohol on his breath. Hence this case is not like Waters, where objective proof within the individual's possession could have ended the investigation before it began. Here, the Navy was confronted with entirely subjective allegations of intoxication and inappropriate conduct. Indeed, the testimony of Hogan's co-workers was the only evidence of his behavior. There was simply nothing "impracticable" in the Navy's decision to investigate the allegations by talking to

eyewitnesses. To hold otherwise would be to read the "to the greatest extent practicable" language right out of the statute.

Hogan also complains that the Navy did not interview him first. This fact, by itself, does not rise to the level of a Privacy Act violation. So long as the agency inevitably will need to interview both Hogan and others, the Act takes no position on the order in which they are approached. Indeed, one reasonably might argue that Hogan benefitted from being interviewed late in the process. Cf. Carton, 310 F.3d at 112 ("[I]t might be expected that the interviews with the complainants and others would sharpen the issues and focus the charges in a way that would allow Carton to respond more particularly.").

Because none of Hogan's allegations make out violations of the Privacy Act, summary judgment was appropriately entered against him.


III.

Even if Hogan had alleged a violation of the Act, he still would not be entitled to recover the damages he seeks. To recover monetary damages under the Act, Hogan must show that the violation was "intentional or willful," 5 U.S.C. § 552a(g)(4), and that it had an "adverse effect," id. § 552a(g)(1)(D). The "intentional or willful" standard requires a mens rea "somewhat greater than gross negligence." Waters, 888 F.2d at 875 (quoting analysis of the 1974

7

House and Senate Compromise Amendments to the Privacy Act). Put another way, the violation must have been committed "without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act." Scrimgeour v. Internal Revenue, 149 F.3d 318, 326 (4th Cir. 1998) (quoting Waters, 888 F.2d at 875). The "adverse effect" requirement requires Hogan to demonstrate "actual damages"; he may not presume that any given violation produces actionable, adverse consequences. Doe v. Chao, 540 U.S. 614, 627 (2004).

Hogan did not meet either of these requirements. Although he asserted that his employer acted wilfully and that damages resulted, he did not offer a single fact to substantiate either of these claims. We would therefore affirm the grant of summary judgment even if Hogan had alleged a violation of the Act.

AFFIRMED

8