**U.S. COMMODITY FUTURES TRADING COMMISSION, Plaintiff.**

v.

**TRADE EXCHANGE NETWORK LIMITED, and Intrade the Prediction Market Limited, Defendants.**

**Civil No. 12–1902 (RCL)**

United States District Court, District of Columbia.

Signed June 24, 2014

David S. Slovick, Kathleen M. Banar, U.S. Commodity Futures Trading Commission, Washington, DC, for Plaintiff.

Alain J. Ifrah, David B. Deitch, Ifrah PLLC, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

ROYCE C. LAMBERTH, United States District Judge.

Before the Court is Defendants' Motion for a Protective Order for Information Protected by the Irish Data Protection Act [23] ("Defs. Mot.") and Plaintiff's Motion to Compel Production of Documents and Interrogatory Responses [25] ("Pl.'s Mot."). After considering the motions, the memoranda in support, and the oppositions and

replies thereto, the Court will deny Defendants' motion for a protective order and grant Plaintiff's motion to compel.

## I. BACKGROUND

In 2005, the Commodity Futures Trading Commission ("CFTC") and defendant Trade Exchange Network, Limited ("TEN"), an Irish company, entered into a consent order whereby TEN pledged to cease offering off-exchange binary options on its affiliated websites to U.S. customers. However, the CFTC charges that TEN and its subsidiary, Intrade the Prediction Market Limited ("Intrade"), also an Irish company, did not cease to offer those options. Instead, they continued to offer the prohibited products through Intrade until November 2012, when the CFTC filed the instant complaint. The complaint alleges violations of various commodities laws, including the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* and the CFTC's regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*, as well as the aforementioned consent order.

The CFTC sought discovery from both TEN and Intrade, serving them both with "Plaintiff's First Set of Interrogatories to [Defendants]" (RFIs) [Defs. Mot., Exhs. 1 and 5] and "Plaintiff's First Request for [Defendants] to Produce Documents" (RFPs) [Defs. Mot., Exhs. 2 and 6]. TEN and Intrade responded in part to these requests, but raised several objections to the remainder. Among these objections were that the various requests are duplicative, cumulative, or already satisfied, and that they were prohibited from releasing personal identifying information ("PII") by the Irish Data Protection Act of 1988 (Act No. 1/2008) (Ir.), *available at* http://www.irishstatutebook.ie/1988/en/act/pub/0025/index.html, as amended by the Data Protection (Amendment) Act of 2003 (Act No.

6/2003) (Ir.), *available at* http://www.irishstatutebook.ie/2003/en/act/pub/0006/index.html.[1] Defendants pleaded a foreign government compulsion defense, claiming that they could not release any PII because to do so would be to violate Irish law.

Further negotiations between the parties failed to resolve this dispute, and defendants filed the aforementioned motion for protective order [23], asking this Court to preemptively rule that the defendants need not provide any PII to the CFTC. Prior to this Court's decision on that motion, the CFTC filed a motion to compel cooperation with discovery [25] under Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure, asking that this Court issue an order both requiring the production of any requested PII and also dismissing defendants' various other objections to the RFPs and RFIs. These motions are now ripe for decision.

## II. LEGAL STANDARD

### A. Discovery

■ The scope of a trial court's discretion in handling discovery matters is considerable. *Food Lion Inc. v. United Commercial Workers Int'l Union,* 103 F.3d 1007, 1012 (D.C.Cir.1997) (citing *Brune v. Internal Revenue Serv.,* 861 F.2d 1284, 1288 (D.C.Cir.1988)). Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery on any nonprivileged matter relevant to a claim or defense; anything reasonably calculated to lead to admissible evidence at trial is considered relevant, though what is discovered need not be itself admissible. Fed. R.Civ.P. 26(b)(1). An interrogatory can relate to any matter that fits within the scope outlined in Fed.R.Civ.P. 26(b). Fed. R.Civ.P. 33(b). Additionally, under Fed.

---

**1.** Hereinafter, citations to both acts will be in the form "Irish DPA § ___."

R.Civ.P. 34(a) a party may serve on any other party a request for the production of documents so long as the request falls within the scope of Fed.R.Civ.P. 26(b).

## B. Evaluation of Foreign Law

Federal court examination of foreign law is governed by Rule 44.1 of the Federal Rules of Civil Procedure. Rule 44.1 makes it very clear that a party wishing to raise an issue about foreign law must give notice in writing. Fed.R.Civ.P. 44.1. To make its decision regarding foreign law, a court may use any relevant material or source, and is not limited to the parties' pleadings. *Id.* Determinations of foreign law are questions of law, not fact. *Id.*

■ The Court is permitted to conduct its own research into foreign law, out of a concern that "[t]he court may have at its disposal better foreign law materials than counsel have presented, or may wish to reexamine and amplify material that has been presented by counsel in partisan fashion or insufficient detail." Fed. R.Civ.P. 44.1, 1966 advisory committee's note. "There is no requirement that the court give formal notice to the parties of its intention to engage in its own research on an issue of foreign law," though "the court should inform parties of material it has found diverging substantially from the material which they have presented." *Id.*

## III. ANALYSIS

### A. Defendants' Objections to Individual Requests for Production

Defendants objected to a total of nine document requests: RFP Nos. 1, 2, 3, 4, 9, 10, 12, 13, and 14. *See* Defendant's Opposition to Plaintiff's Motion to Compel [29] ("Defs.' Opp.") at 8–14. The Court will deal with each of those objections individually.

### 1. RFP No. 1

■ RFP No. 1 requests documents identifying TEN and Intrade's U.S. customers and their contact information; defendants object on the grounds that (1) compliance would violate Irish law and (2) TEN had no customers during the relevant period. Defs.' Opp. at 8. The Court deals with the Irish DPA-related claims more fully in § III.C, *infra*, and concludes that the Irish DPA does not prohibit disclosure here. As to TEN's claims that it had no customers at all during the relevant period—the Court shares the CFTC's doubts about this assertion. *See* Pl.'s Mot. at ¶ 15–16. However, if TEN truly had no customers during the relevant period, then obviously no documents can be produced. TEN must provide further clarification as to why it had no customers during the relevant period if it truly had none; otherwise, it must produce those documents. A conclusory assertion that TEN had no customers during the relevant period does not suffice.

### 2. RFP No. 2

■ RFP No. 2 requests documents identifying former high-level officers, directors, etc. of TEN and/or Intrade. Defendants first make an Irish DPA-based objection which, as stated above, has no validity, and then refuse to provide addresses for some of those individuals because those individuals are no longer "friendly" with defendants and because their addresses are publicly available. Defs.' Opp. at 8–9. Those objections simply have no bearing on whether defendants need to provide the requested information. Parties from whom documents are requested must produce those documents if the request is otherwise unobjectionable and the documents are within those parties' "possession, custody, or control." Fed.R.Civ.P. 34(a)(1). Defendants make

no complaints under Fed.R.Civ.P. 26(b) that the requested discovery is irrelevant, unreasonably cumulative, or duplicative; therefore, they can only escape their production responsibilities if the requested information is not in their possession. They make no such claim here, and thus must produce.

### 3. RFP No. 3

■ RFP No. 3 requires TEN/Intrade to produce all documents reflecting communication between TEN and/or Intrade and U.S. customers related to binary option accounts, contracts or trades. Defs.' Opp. at 9. Defendants initially objected to this request as overbroad in that it requested irrelevant information—the CFTC's complaint is only concerned with a specific subset of option contracts, not all option contracts, but this request on its face concerns all option contracts. *Id.* However, the CFTC and defendants have met and conferred about this request, and that defendants are well aware that the CFTC seeks only those documents related to the contracts at issue in its complaint. *See* Plaintiffs Reply in Support of Its Motion to Compel [30] ("Pl.'s Rep.") at 7. And, as the CFTC correctly points out, even if defendants had not received clarification on which documents to produce, they would still have been required to produce documents for those parts of the RFP to which they did not object. *Id.*; *see also* Fed.R.Civ.P. 34(b)(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest."); Fed.R.Civ.P. 26, 1993 advisory committee's note ("If a broad discovery request is made ... and the responding party believes in good faith that the production of [some documents] would be unduly burdensome, it should make its objection to the breadth of the request and ... produce the [unobjectionable] documents.") Here, however, defendants know

exactly what the CFTC wants, despite their weak protestations to the contrary, and are attempting to use deliberate misunderstanding as a shield to production. The Court will not allow this.

Defendants also claim that they have in fact produced documents responsive to this request in the form of a spreadsheet of data they took from a master customer database. Defs.' Opp. at 10. This misunderstands the role of the party from whom discovery is requested under the Federal Rules of Civil Procedure. It is not up to the party from whom documents are requested to pick and choose how to present relevant information; instead, the requesting party is entitled to source documentation. Defendants' argument that they can simply pull the relevant data out of a database and hand it over in a spreadsheet is the equivalent of asserting that a request for emails can be met by a Microsoft Word documents summarizing the contents of those emails. The CFTC is entitled to source documentation, and defendants even admit this is so—they note that "but for [the Irish DPA], defendants were prepared to give plaintiff unfettered access to the data base [sic] of information." Defs.' Opp. at 10, n. 5. Given that the Irish DPA does not operate as a bar here, defendants must give the CFTC that unfettered access.

### 4. RFP No. 4

■ RFP No. 4 seeks documents regarding TEN and Intrade's bank accounts; defendants object on the grounds that (a) this request will not lead to admissible evidence, (b) they have already provided a sworn interrogatory response on this same topic, and (c) they do not know what documents "sufficient to identify" means. These objections are generally baseless. The request clearly could lead to admissible evidence—as plaintiffs point out in

their reply, this information is directly relevant to their prayer for relief. Pl's Rep. at 10. Even though this may not directly lead to admissible evidence, civil discovery in the U.S. court system is designed to be broad, and is certainly broad enough to encompass this. *See generally* Fed. R.Civ.P. 26 advisory committee's notes (repeatedly emphasizing that discovery is meant to be broad). The fact that defendants have provided a sworn response to an interrogatory is irrelevant; again, plaintiffs are entitled to source documentation, so that they can draw their own conclusions. Finally, the Court feels that defendants' claims not to understand what "sufficient" means in the context of the request are deliberate obfuscation. Defendants, as far as can be seen, do not claim that "sufficient" was so unclear that they had no idea what to produce—rather, they seem to claim that they could not be sure they adequately met their production responsibilities. As stated above, such an objection brings with it an obligation to produce what is unobjectionable, which defendants have not done.

### 5. RFP No. 9

■ This request asks for all communications between the defendants and the CFTC from January 1, 2005, to the present. Defs.' Opp. at 11. Defendants appear to object to this as cumulative because the CFTC already has those documents in their own records, but then undermine this objection by stating that they are "undertaking further searches to determine whether they have any documents responsive to this request and will produce them." *Id.* at 12. Obviously, defendants have documents responsive to this request; to be perfectly clear, the fact that the CFTC also may have these documents is irrelevant to defendants' production obligations.

### 6. RFP No. 10

■ RFP No. 10 requests document related to the 2005 Consent Order; defendants aver, rather unbelievably, that they have no responsive documents. *Id.* However, they also state that if they locate any non-privileged documents, they will produce them. *Id.* Obviously if TEN and Intrade truly have no responsive documents to this request that they cannot produce anything responsive to this request. But it stretches credulity past its breaking point to assert that TEN has no documents regarding a Consent Order that TEN itself entered into—this Court simply cannot believe that without further explanation. TEN must produce all non-privileged documents responsive to this request.

### 7. RFP No. 12

■ RFP No. 12 asks for documentation regarding fees or commissions TEN or Intrade charged to U.S. customers. Again, defendants repeat their assertion that TEN had no customers during the relevant period, which must be backed up by something more to satisfy this Court. *Id.* Defendants also claim that the requested information is contained in the database discussed *supra* in § III.A.3. *Id.* As discussed there, Intrade must provide the CFTC source access to this database, which will presumably also give the CFTC access to information responsive to this request.

### 8. RFP No. 13

■ RFP No. 13 requests documents sufficient to identify websites owned, operated, or affiliated with TEN and/or Intrade. *Id.* at 13. Defendants first claim that the word "affiliated" is ambiguous; again, as explained *supra* in § III.A.3, defendants' obligation was to produce what

they could and note their objection. Additionally, "affiliated" is not on its face an ambiguous term, and defendants should have been able to respond to this request without kvetching. Defendants also complain that the request is overbroad, in that it may request documents relating to websites where U.S. customers did not trade. Again, this simply misunderstands the Federal Rules of Civil Procedure. An overbroad request should be met with a production of unobjectionable documents and an objection as to producing the rest. *See* Fed.R.Civ.P. 26, 1993 advisory committee's note ("If a broad discovery request is made ... and the responding party believes in good faith that the production of [some documents] would be unduly burdensome, it should make its objection to the breadth of the request and ... produce the [unobjectionable] documents.") The defendants must produce all documents regarding websites on which U.S. customers were solicited or traded.

### 9. RFP No. 14

 Finally, RFP No. 14 deals with documents showing funds invested by U.S. customers and the current locations of those funds. Defs.' Opp. at 13. Defendants first claim that the request is overbroad, as it could on its face refer to contracts not implicated in the complaint. *Id.* Again, the response to this is that meet and confer meetings have clarified what exactly CFTC seeks and that defendants should have produced the documents that they did not object to producing instead of refusing to produce anything. Second, defendants make the same Irish DPA claim which is dealt with *infra* in § III.C. Finally, defendants claim that the information requested here has no connection to the complaint; as stated ably in the Pl's Rep. at 10, this information is very clearly relevant. Defendants must comply with this request.

### B. Defendants' Objections to Individual Interrogatories

 Defendants provided incomplete responses to the various RFIs, claiming that they did not understand the meaning of the terms "knowledge of" and "affiliate." Pl's Mot. at 13. Defendants claim that "knowledge of" a given set of transactions could mean a person who has knowledge of at least one of those transactions or a person who has knowledge of every single one of the transactions, and have chosen the latter meaning. Defs.' Opp. at 15. To state this argument really is to decide it; the meaning here is really too obvious to be mistaken. TEN and/or Intrade must answer the interrogatories fully, and, to be clear, this means providing the names of, to use the CFTC's formulation, any of "Defendants' officers, directors, employees, and agents, and anyone else in active concert with them" who had knowledge of one or more of the relevant transactions. Pl's Rep. at 11. The supposed lack of clarity in "affiliate" was discussed *supra* in § III.A.8; this is a word with an obvious meaning which defendants cannot hide behind in order to avoid answering interrogatories.

### C. Defendants' Foreign Government Compulsion Claims

 Defendants' final claim is that they cannot be compelled to produce the requested documents because doing so would require them to violate Irish law, which this Court should not order. The Irish DPA generally prohibits the transfer of "personal data" (equivalent to the PII at issue here) to countries outside of the European Economic Area unless the country in question has adequate privacy safeguards. Irish DPA § 11(1). There are various methods for determining whether a country has adequate privacy safe-

guards, but the only one relevant here is laid out in Section 2, which states that when "a [finding of the European Commission as to adequacy of protection] has been made in relation to transfers of the kind in question, the question shall be determined in accordance with that finding." Irish DPA § 11(2)(a)(ii). The European Commission has determined that the United States does not have adequate procedures, though there are safe harbor provisions which again are of no relevance here.

Thus, barring some exception to the general rule that PII cannot be transferred from Ireland to the U.S., any compulsion of discovery would require defendants to choose between violating Irish or American law. The CFTC argues that the Irish DPA contains just such an exception: namely, Section 11(4)(a)(vi), which counsels that "[the prohibition on transfer] shall not apply ... if ... the transfer is necessary ... for the purpose of or in connection with legal proceedings or prospective legal proceedings or is otherwise necessary for the purposes of establishing or defending legal rights" (the "Section 11(4)(a)(vi) exception"). The plain import of this clause is clear—PII and its equivalents can be transferred outside of Ireland for use in legal proceedings, whether or not destination country has Irish DPA-adequate safeguards.

 Against the plain meaning of the statute defendants proffer the opinion of Garrett O'Neill, an Assistant Commissioner in the Office of the Irish Data Protection Commissioner. Defendants' Reply to Opposition to Motion for Protective Order [28] ("Defs.' Rep."), Exh. B. After identifying the potential issues with exporting PII from Ireland, defendants contacted Mr. O'Neill, who provided them with a response stating:

> The release of personal information of the clients of these companies, is prohib-

ited, unless provided for, under some legal exemption under the Act. These exemptions only apply to this jurisdiction and do not have extra territorial effect unless there is an international agreement in place for that to occur (i.e. an extradition agreement). In this current problem there does not appear to be such an international agreement.

Defendant's Motion for a Protective Order [23] ("Defs.' Mot."), Exh. M. Mr. O'Neill made clear that he was providing only general advice to the defendants, and advised that they consult an American or Irish lawyer specializing in these issues. *Id.*

Plaintiffs have also spoken to members of the office of the Data Protection Commissioner; they have spoken to Stephen Laffan, a "Technical Data Security Investigations Officer," as well as Mr. O'Neill. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Protective Order [26] ("Pl.'s Opp.), Exh. 5. Mr. Laffan affirmed that the exemption in Section 11(4)(a)(vi) exists precisely for proceedings like these—i.e. it is to be used when an Irish company needs to transfer personal data because of a legal proceeding. *Id.* During plaintiff's conversation with Mr. O'Neill, he retreated from his previously-expressed views, stating that he needed to talk with his colleagues to ascertain whether the Section 11(4)(a)(vi) exception applied. *Id.* However, when defendants once again contacted Mr. O'Neill, he reaffirmed his earlier views, stating that it was "unlikely" that the 11(4)(a)(vi) exemption applied because it only applied where there was an international agreement. Defs.' Rep., Exh. A.

The website of the Office of the Irish Data Protection Commissioner contains "Comments" on the various provisions of the Irish DPA. The comment on Section 11(4)(a)(vi) states, in relevant part, "[t]his

provision appears to be of relevance ... where a data controller in Ireland is involved as a party in legal proceedings in a third country, *and* the data controller needs to make personal data available in that third country for the purpose of legal proceedings." *See* http://www.dataprotection.ie/docs/TransfersAbroad/37.htm. Mr. O'Neill, when asked whether he was familiar with this comment, averred that he was not. Pl.'s Opp., Exh. 5.

Defendants want this Court to take O'Neill's opinion as the final word on the Irish DPA, and therefore issue a protective order permitting them to withhold documents containing PPI. Under Fed. R.Civ.P. 44.1, this Court certainly has that discretion; "[i]n determining foreign law, the court may consider any relevant material or source." Fed.R.Civ.P. 44.1. Mr. O'Neill's beliefs as to what the law entails certainly are relevant—he works for the authority responsible for enforcing the Irish DPA.

However, this Court cannot simply accede to his views without further inquiry. Defendants made no effort to qualify Mr. O'Neill as an expert on Irish data protection law. Instead, they simply presented his opinion in the form of a pair of emails he sent to defendants—Mr. O'Neill was not sworn, and does not appear to have been aware that his opinion was intended for use as proof of Irish law in a federal court case. Moreover, the emails themselves are not as persuasive as defendants proclaim, and Mr. O'Neill gave somewhat contradictory answers to similarly-focused questions when he spoke to the CFTC.

Bluntly, the picture that emerges from the parties' various interactions with Mr. O'Neill is not that of someone with any special expertise on this particular issue. In his initial communication with defendants, Mr. O'Neill made clear that he could only provide general advice, and he advised defendants to consult someone, essentially, with actual expertise in these issues. Someone who is absolutely confident in their interpretation of a given provision does not demur in that manner. Even his final statement to defendants was diffident; Mr. O'Neill merely stated that it was "unlikely"—not impossible—that the 11(4)(a)(vi) exception within the Irish DPA applied to this situation. Additionally, the fact that Mr. O'Neill had previously been unaware of the comment to Section 11(4)(a)(vi) suggests strongly that he lacks subject-matter expertise; that comment contradicts his stated views, and it is difficult to imagine an expert on that section being unaware of it.

But even if Mr. O'Neill's statements to the parties had been ironclad in their opposition to the application of this exception this Court would still not consider them exclusively probative of Irish law. The defendants' characterization of Mr. O'Neill's views simply does not make sense in light of the statute itself. The Oireachtas passed the Irish DPA specifically to deal with the problem of data transfer to other countries. The 11(4)(a)(vi) exception (and all the exceptions with Section 11 of the Irish DPA) deal very specifically with the situations under which the normal prohibitions on data transfer to non-approved countries are waived. Mr. O'Neill's interpretation suggests that Irish legislators neglected to include a central further restriction—that the exceptions only apply where an international agreement is already in place—which is nowhere implied in the text. The necessary underpinning of this reasoning is that Irish legislators are guilty of a level of statutory sloppiness that would boggle the mind—an imputation this Court is unwilling to countenance.

Along with the plain text of the statute, the official comment to the statute and the

interpretation provided by Mr. Laffan support the CFTC's preferred reading. The comment, which defendants did not address at all in their filings, states very explicitly that Section 11(4)(a)(vi) is of relevance in situations like these. To counteract this comment, defendants offer only the statements of Mr. O'Neill, but Mr. O'Neill had previously confessed to the CFTC that he was unfamiliar with the comment. And the statements of Mr. Laffan suggest that, whatever Mr. O'Neill's interpretation of the law was, it certainly had not percolated throughout the Office of the Data Protection Commissioner. This at the least implies that Mr. O'Neill was giving his beliefs about the proper reading of the statute, not stating the official position of the Office of the Data Protection Commissioner, which would entitle his opinion to even less weight. Exercising its right under Rule 44.1 of the Federal Rule of Civil Procedure, this Court also independently researched whether any Irish court had provided an authoritative interpretation of this provision; no court has as yet.

In sum, defendants ask the Court to ignore the plain meaning of the statute, the comments to the statute, and the statements of Mr. Gaffan and instead adopt Mr. O'Neill's interpretation. Even if Mr. O'Neill's views were as pellucid as defendants portray them to be, this Court could not simply accept them without performing its own inquiries. That the views were expressed in a contradictory and somewhat vacillating manner makes them even less persuasive. It is clear to the Court that the Irish statute allows for the transfer of PII under these circumstances; indeed, it appears that the Section

11(4)(a)(vi) exception was designed with this specific situation in mind. As such, defendants' foreign government compulsion defense must fail.

## IV. CONCLUSION

Defendants' arguments against specific RFPs and RFIs are entirely baseless, and this Court rejects them wholly. Defendants' Irish DPA argument is more plausible, but this data transfer clearly falls within the exception articulated in § 11(4)(a)(vi), Mr. O'Neill's contrary views notwithstanding. Therefore, the Court GRANTS in its entirety Plaintiff's Motion [25] to Compel Defendants to Produce Documents and Interrogatory Responses. The Court DENIES Defendants' Motion [23] for Protective Order. TEN and Intrade must produce all documents responsive to the CFTC's requests for production and also complete their responses to the CFTC's interrogatories within twenty (20) days of the entry of this order, and must produce Ronald Bernstein for a deposition regarding the location of documents and witnesses within ten (10) days of the entry of this order, at a date and time convenient to the parties.[2]

It is **SO ORDERED** this 24th day of June 2014.

---

2. Defendants make no response to the plaintiff's request for Mr. Bernstein to appear for a deposition beyond stating that he has avoided appearing to this point only because of the Irish DPA issues. Defs.' Rep. at 12. Because this Court has now resolved the Irish DPA issues, defendants therefore should have no problem with producing Mr. Bernstein for the requested deposition.